Brian M. Rothschild, USB #15316
Darren Neilson, USB #15005
Simeon Brown, USB #17951
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
BRothschild@parsonsbehle.com
DNeilson@parsonsbehle.com
SBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Peak Theory, Inc.*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| In re: | Case No. 22-bk-23480-JTM |
|---|---|
| Peak Theory, Inc. | Chapter 11 |
| Debtor. | Chief Judge Joel T. Marker |

### DEBTOR'S MOTION REQUESTING ENTRY OF ORDERS:

(A) SCHEDULING AN AUCTION AND SALE HEARING IN CONNECTION WITH
THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS;

(B) PRESCRIBING BID PROCEDURES AND PROTECTIONS FOR SALE OF
DEBTOR'S ASSETS;

(C) APPROVING FORM AND SCOPE OF NOTICE OF BID PROCEDURES,
AUCTION, AND SALE HEARING; AND

(D) APPROVING, AT SUBSEQUENT HEARING, OF SALE OF DEBTOR'S ASSETS
TO PURCHASER FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS

---

Peak Theory, Inc., d/b/a Cubcoats, the above captioned debtor and debtor in possession ("**Cubcoats**" or the "**Debtor**" or the "**Seller**"), by and through its undersigned proposed counsel, hereby moves the Court (the "**Motion**") under sections 105, 361, 362, 363, 364, 1107, and 1108 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for (a) entry of an order, substantially in the form attached as Exhibit A hereto prescribing the Bid Procedures (the "**Bid Procedures Order**") and scheduling an auction and sale hearing in connection with the sale of substantially all Debtor's assets (the "**Sale**"), (b) prescribing bid procedures and protections for sale of such assets (the "**Bid Procedures**"), (c) approving procedure and form and scope of notice of assumption, assignment and sale of Debtor's contracts and leases to the person who makes the highest and best offer (the "**Purchaser**"), (d) approving, at subsequent hearing and after submission of a Motion to Approve the Sale (the "**Sale Motion**"), of the Sale of Debtor's assets to Purchaser free and clear of all liens, claims, encumbrances, and other interests.  In support, the Debtor respectfully states as follows.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      SUMMARY OF RELIEF REQUESTED

Cubcoats Acquisition Vehicle LLC (the "**Stalking Horse Bidder**") has submitted an offer, conducted diligence, negotiated with the Debtor, and executed an asset purchase agreement (the "**APA**" or "**Asset Purchase Agreement**")[1] attached as Exhibit B hereto, which is subject to higher and better offers and approval by the Court.  Under this Motion, the Debtor seeks authorization to

---

[1] Capitalized terms not defined herein shall have the meanings set forth in the Bid Procedures or APA, as applicable.

sell the Acquired Assets (as defined in the APA) to the Stalking Horse Bidder, or, if outbid, to the highest bidder that complies with the Bid Procedures (the "**Winning Bidder**" or "**Purchaser**"). To accomplish the Sale and ensure that it is the highest and best offer available for the Debtor's assets, the Debtor will seek competing bids and conduct an auction (the "**Auction**") using the following process:

    a.   If the Court will enter the Bid Procedures Order attached as Exhibit A hereto, prescribing the form and manner of the Sale, submission of competitive bids, and ultimately, an auction (the "**Auction**") of the Purchased Assets, and scheduling a hearing (the "**Sale Hearing**") to consider the proposed Sale, the Debtor will serve the form of Notice of the Sale and the Bid Procedures (the "**Sale Notice**") substantially in the form attached as Exhibit 2 to Exhibit A hereto, on all parties entitled to notice, including the Debtor's entire mailing matrix;

    b.   After the consideration of all bids and conclusion of the Auction (if any) under the Bid Procedures, the Debtor will file the Sale Motion, seeking entry of the order, in the form to be submitted with the Sale Motion, approving Sale of the Purchased Assets to Purchaser (the "**Sale Order**") free and clear of all liens, claims, encumbrances, or other interests pursuant to sections 363(b), (f), (k) and (m) and 365 of the Bankruptcy Code and approving the assumption, assignment and sale of the Purchased Contracts (as defined in the APA) under section 365 of the Bankruptcy Code.

This Motion is supported by this Memorandum of Points and Authorities, the Declaration of Zac Park (the "**Park Declaration**") the entire record before the Court in this case, and the

arguments of counsel and other admissible evidence properly brought before the Court at or before

the hearing(s) on this Motion and the Sale Motion.

## II.      JURISDICTION AND BASES FOR RELIEF

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This

matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The Debtor's principal offices and principal place of business are within the District

of Utah, and, therefore, venue is proper in this District under 28 U.S.C. §§ 1408(1) and 1409.

3.      The bases for the relief requested herein are sections 105(a) and 363 of the

Bankruptcy Code and rules 6003 and 6004 of the Bankruptcy Rules.

## III.      GENERAL BACKGROUND

4.      Founded in 2017, the Debtor is an innovative retail company that designs and

produces character-based children's products and appeal.  Debtor's bestselling product is a 2-in-1

children's stuffed animal that transforms into a wearable shirt, jacket, or sweatshirt. The Debtor

has a loyal following, positive brand awareness, access to e-commerce platforms, and great

products. Park Declaration ¶ 2.

5.      By late 2020, it was clear that Cubcoats was going to miss its revenue targets for

the year.  To make matters worse, in anticipation of the 4th quarter sales, Cubcoats ordered a large

quantity of inventory to sell through the fall/holiday season.  Unfortunately, the cargo ship holding

Cubcoat's inventory was delayed due to a storm and arrived sporadically throughout January and

February 2021. This caused a ripple effect and Cubcoats missed the 2020 holiday rush, which lost

the Company a substantial portion of its anticipated revenue for 2020.  Furthermore, when the

inventory did arrive, the inventory's invoice became due, and with the missed potential revenue,

Cubcoats did not have adequate cash flow to pay for the late arrived inventory.  Finally, Mr. Park, who played a significant role in the management of the Debtor, as well as running all marketing aspects of the business, became abruptly ill near the end of 2020, and was diagnosed with a chronic auto-immune disease, which made it difficult to manage the company.  Park Declaration ¶ 3.

6.      Mr. Park spent most of 2021 and 2022 seeking buyers for the company.  There were many suitors for Cubcoats but simply put, the debt obligations of the company were too large, and Cubcoats strategy of growth ultimately outpaced the company. Park Declaration ¶ 4.

7.      In order to stop collection activities and to pave the way for a sale of the business, on September 5, 2022 (the "**Petition Date**") the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").  The primary purpose of the Debtor's Chapter 11 Case is to facilitate a sale of substantially all of the Debtor's assets through an orderly and competitive sale process.  Additional factual information specific to the Motion is set forth below.

### III.    BACKGROUND SPECIFIC TO THE BID PROCEDURES MOTION

### A.    The Debtor's Prepetition Marketing Efforts

8.      Prior to the Petition Date, the Debtor, through Mr. Park, attempted to sell the company.  Mr. Park had numerous conversations with interested parties and eventually entered into letters of intent with eleven interested parties.  After due diligence, none of the interested parties completed a purchase due to the large debt obligations of the Debtor.  Eventually it was determent that a sale process through bankruptcy under section 363(f) of the Bankruptcy Code would be the best avenue to sell Cubcoats to allow a purchaser to "right size" the business.  Park Declaration ¶ 4.

4868-1860-0009

**B.**    **The Proposed Sale and Stalking Horse Bidder**

1.    One of the Pre-Petition interested parties was Mr. Frankie Ordoubadi.  Mr. Ordoubadi conducted a lot of due diligence prior to the Petition Date.  Mr. Ordoubadi is not an insider of the Debtor and is an unrelated third party. Park Declaration ¶ 5.

9.    After the Petition Date, Mr. Ordoubadi's counsel reached out to Debtor's counsel expressing Mr. Ordoubadi's interest in purchasing the assets of the Debtor.  Debtor's counsel and Mr. Ordoubadi's counsel had multiple discussions and communication and arrived at a mutually agreed to purchase price as set forth in the APA and Mr. Ordoubadi agreed to serve as a stalking horse bidder.

10.    In conjunction with the APA, the Debtor, through its broker has continued to market the Acquired Assets through its website, through an email campaign, and through direct contact with potential interested parties.

11.    The Debtor believes that the proposed Sale to the Stalking Horse Bidder, as reflected in the APA, represents the highest and best bid for the Debtor's assets.  The APA is the result of an extensive marketing process.  But even if it did not represent the highest and best offer, the offer remains subject to higher and better bids at the Auction.  The Debtor has determined, in the exercise of its sound business judgment, that consummation of the Sale will maximize the value of its estate.  For these reasons and the reasons discussed herein and evidence adduced at the hearings, the Sale is in the best interests of the estate's stakeholders, and the Court should approve the Motion.

12.    The Sale to the Stalking Horse Bidder will yield cash proceeds of approximately $370,000 (as defined in the APA, the "**Purchase Price**.)  While the Purchase Price is not sufficient

to cover the Debtor's outstanding secure debts[2] and the estate's administrative expenses, the

Debtor is hopeful that through the competitive auction process, the Debtor will be able to receive

higher and better bids to allow payments to flow to the Debtor's unsecured creditors.

13.    The Debtor will continue to vigorously market its assets over the next 30+ days in

an effort to obtain higher and better bids at the Auction through its broker.  The Debtor has been

informed and believes that the listing and marketing of Debtor's assets have been widely seen and

has generated interest with multiple parties.

14.    Based on the foregoing and for the reasons set forth below, the Debtor believes that

the proposed Sale will maximize the value of the Debtor's assets.

C.    **Material Terms of the Proposed Sale to the Stalking Horse Bidder**

15.    The Debtor proposes to sell substantially all of its assets to the Purchaser free and

clear of all liens, claims, rights, interests and encumbrances except as specified in the APA, in

accordance with sections 363(b), (f) and (k) of the Bankruptcy Code.

16.    The following are the material terms of the proposed Sale to under the APA

submitted by the Stalking Horse Bidder:[3]

**Acquired Assets and Unacquired Assets.** Seller agrees to sell, transfer and
assign to Purchaser, and Purchaser agrees to purchase from Seller, all of Seller's right, title
and interest in, to and under all of the Debtor's and its estate's assets, whether or not
scheduled, including, but not limited to, all property of the Debtor and claims of the
Debtor's estate within the meaning of title 11 of the United States Code (the "Acquired
Assets"), excepting only the Debtor's cash on hand as of the Petition Date. To the extent
that the Acquired Assets include rights in litigation and/or pursuant to contracts under
which the Debtor is a party, the Purchaser may elect not to purchase such assets and, if so,
until 60 days after the Closing Date, designate such assets, or any other property of the

---

[2] Currently the Debtor has identified two secured claims held by both AppleTree Capital, LLC and the Attanasio Revocable Trust dated November 1, 1996, each for $250,000.  The Debtor believes that it has an agreement with each creditor to allow it to pay administrative costs.

[3] To the extent of any conflict between this Motion and the APA, the APA controls.

Debtor or the Debtor's estate, as "Unacquired Assets." Seller's designation of Unacquired Assets shall be effected by Seller's filing of a notice of Unacquired Assets in the Bankruptcy Court and serving such notice only on the Debtor and other parties who receive electronic notice of filings in the case. Any additional service of the notice of Unacquired Assets shall be provided by the Debtor.

**Sale Free and Clear.** The sale of the Acquired Assets shall be free and clear of all liens, interests, rights, and claims, if any, of any and all persons or entities, pursuant to section 363(f) of the Bankruptcy Code. Without limiting the generality of the foregoing: (a) there shall be no successor liability to Purchaser, and (b) all creditors and equity interest holders of the Debtor will be enjoined from pursuing any claims against the Purchaser.

**Payment of Purchase Price.** In consideration of the sale, transfer, conveyance and assignment of the Acquired Assets to Purchaser, Purchaser agrees to pay Seller a total of $370,000 payable as follows (the "Purchase Price"):

a. Payment of $200,000.00 due in full on the Closing Date; and

b. Payment of $170,000.00 paid in 36 monthly installments of $4,722.22 per installment, with the first installment due by the 1st of the month occurring not less than 28 days after the Closing Date.

**D.    Stalking Horse Bidder Protections**

17.    In addition to the above terms, the Debtor and the Stalking Horse Bidder have agreed on customary bid protections as follows:

**Break-Up Fee and Expense Reimbursement**.  In the event that there is a successful verbid, Purchaser shall receive $25,000.00 payable upon closing of the sale to the overbidder (the "**Break-up Fee**").

18.    All other terms and conditions of the proposed Sale are as set forth in the APA.

**E.    Proposed Bid Procedures**

19.    The Debtor requests approval of the Bid Procedures and entry of the Bid Procedures Order attached as Exhibit A hereto and incorporated herein in their entirety by reference.

**F.    Timetable for Auction and Sale Process**

20.    The following chart summarizes the Debtor's proposed timetable for the Auction and Sale process, which is incorporated in the Bid Procedures Order:

4868-1860-0009

| DESCRIPTION OF MILESTONE / DEADLINE | DATE OR DEADLINE |
|---|---|
| Bid Procedures Hearing | February 14, 2023. |
| Deadline to Meet Participation Requirements | February 13, 2023. |
| Deadline to Submit Qualified Bids | February 13, 2023 |
| Auction | February 21, 2023. |
| Sale Hearing | February 27, 2023. |

## III.   LEGAL AUTHORITY AND ARGUMENT

### A.   The Proposed Sale of the Purchased Assets Should Be Approved Under Section 363(b) of the Bankruptcy Code.

The debtor, after notice and a hearing, may use, sell, or lease property, other than in the ordinary course of business.  11 U.S.C. § 363(b)(1).  A debtor's application of its sound business judgment in the use, sale, or lease of property is subject to great judicial deference.  *See, e.g., Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani),* 325 B.R. 282, 288-89 (B.A.P. 9th Cir. 2005) ("The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances. . . . Ordinarily, the position of the trustee [or debtor in possession] is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection."); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . whether the proffered business justification is sufficient depends on the facts of the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.") (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D.

Del. 2003) (finding that "a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction").

In interpreting section 363(b)(1) of the Bankruptcy Code, courts have held that a transaction involving property of the estate generally should be approved where the debtor or trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Walter*, 83 B.R. at 19-20; *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (approval where a sound business purpose exists). Among other factors, courts should consider the consideration to be paid, the financial condition and needs of the debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to be sold would decline in value if left in the debtor's possession. *See Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.)*, 492 F.2d 793, 794 (9th Cir. 1974) (affirming court's finding that the proposed sale of the debtor's assets would be in the best interest of the estate in light of impending deterioration of market value of debtor's assets).

It is the Debtor's business judgment that, after considering potential alternatives, the proposed Sale of the Purchased Assets to the Stalking Horse Bidder or the Winning Bidder is in the best interest of the Debtor, its estate, and all stakeholders. The Debtor is unable to sustain operations without further borrowing, which is unavailable. The proposed Sale will preserve the going-concern value of the Debtor's business, yield a higher price than piecemeal liquidation or a shutdown, and thus result in a higher return for creditors. The Purchase Price obtained through

the proposed Bid Procedures and Auction will provide the maximum value possible to the Debtor under the current circumstances.

Overall, the proposed Sale's benefits greatly exceed those of any piecemeal liquidation or a forced shutdown, which would yield no consideration. The proposed Sale is supported by sound business reasons and is in the best interests of the Debtor and its estate.

The Proposed Bid Procedures and Protections Are Reasonable and Appropriate and Will Facilitate Maximizing the Value of the Purchased Assets.

In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or by auction. The Debtor seeks authority to conduct the Auction at which any Qualified Bidder may submit offers until the highest or best bid is achieved. The Bid Procedures described herein, and the Debtor's extensive prepetition marketing efforts and its continued post-petition marketing efforts with Quiet Light are reasonably calculated to encourage any potentially interested buyers to submit a bid to maximize the value of the Purchased Assets for the benefit of the Debtor's estate. The proposed Purchase Price from the Stalking Horse Bidder of $370,000 would cover all secured debts, and the Break-up Fee $25,000 – will not chill bidding as the Debtor expects that if any other parties show up to the auction, the final Purchase Price could be many multiples of the current offer. Likewise, the bidding increment of $30,000 is reasonable in a sale of assets in this range and is unlikely to chill any competing bids for the Purchased Assets.

The substantial interest in the Debtor's assets already achieved is itself the result of a thorough marketing process, and thus is a reasonable sale price established by the market for the Purchased Assets. But the Bid Procedures and Auction will potentially lead to further competition

and/or the possibility of higher and better offers from persons who have not yet shown interest, ensuring that the Purchased Assets will not be sold for less than reasonably equivalent value. The Debtor, with the assistance of its professionals, will further solicit proposals for the Sale of the Purchased Assets prior to the proposed bid deadline, and based on these efforts, the Debtor will have more than sufficiently marketed the Purchased Assets prior to the Auction. Therefore, the Debtor submits that good cause exists to approve the Bid Procedures because they are fair and reasonable under the circumstances, will encourage competitive bidding, and achieve the highest and best price for the Purchased Assets.

Courts frequently approve competitive bid procedures like the proposed Bid Procedures as a means of ensuring that such sales will maximize value for the estate. *See, e.g., Doehring v. Crown Corp. (In re Crown Corp.)*, 679 F.2d 774, 775 (9th Cir. 1982) (district court required specific minimum overbid amounts, deposits, and comparable deal terms to be used by all overbidders). The Bid Procedures are fair and reasonable procedures reasonably intended to encourage competitive bidding, which is a clear benefit to the Debtor's estate.

For the reasons set forth above, the Debtor respectfully requests approval of (a) the Bid Procedures for the conduct of the Auction and selection of the Successful Bidder; (b) the procedures set forth herein for notice to counterparties under contracts and leases proposed to be assumed, assigned and sold in connection with the proposed Sale, and the determination and payment of applicable Cure Amounts; (d) the scheduling of the Sale Hearing and other matters for which scheduling is requested; (e) the discretion to alter bid procedures within the Debtor's business judgment to facilitate the highest and best offer; and (f) the related relief sought hereby.

**B.      After a Sale Motion and Hearing, the Debtor Will Seek Court Approval of the Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests Under 11 U.S.C. §§ 363(f) and (k).**

Following the Auction, the Debtor will file the Sale Motion and request that the Court approve the Sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and other interests (collectively, "**Interests**"), except as set forth in the APA, with any such Interests to attach to the proceeds of the Sale with the same validity, enforceability, and priority, if any, as existed with respect to the Purchased Assets as of the date of the commencement of the Debtor's chapter 11 case.

Section 363(f) of the Bankruptcy Code expressly authorizes a debtor to sell property outside the ordinary course of business "free and clear of any interest in such property of an entity" if any one of the five following conditions is met:

1.      applicable non-bankruptcy law permits sale of such property free and clear of such interest;

2.      such entity consents;

3.      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; and

4.      such interest is in bona fide dispute; or

5.      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

4868-1860-0009

Because section 363(f) of the Bankruptcy Code is written in the disjunctive, any one of these five conditions provides authority to sell the Purchased Assets free and clear of liens. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

Further, to the extent that any other party asserting an Interest receives notice of the Motion and does not file a written objection hereto, such party should be deemed to have consented to the proposed Sale of the Purchased Assets free and clear of its asserted Interest(s). *See In re Channel One Comm'cns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).

The Debtor submits that every other Interest in the Purchased Assets, if any, that is not a liability assumed by Purchaser will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will be adequately protected by either being assumed or paid at the time of Closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtor may possess with respect thereto.

In sum, this Court should approve the Sale of the Purchased Assets to the Purchaser free and clear of Interests under sections 363(f) and (k) of the Bankruptcy Code.

C.      **The Proposed Sale Is Not a *Sub Rosa* Plan.**

The proposed Sale under the Bid Procedures is not an impermissible *sub rosa* plan. The *sub rosa* plan objection is typically raised in a §363(b) sale, where all or a substantial portion of the assets are being sold, where the proposed transaction has the effect of dictating the terms of a plan and thereby will "short circuit the requirements of chapter 11 for confirmation of a reorganization plan." *Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983).

Here, the proposed Sale does not allow or disallow any claims, dictate the relative priority of claims, subordinate any claim, confirm or disallow any lien, or dictate the distribution of the proceeds among any of the Debtor's prepetition creditors or other stakeholders.  *See, e.g., Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. by & Through Mabey (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 355 (5th Cir. 1997) (overruling a *sub rosa* plan objection because the proposed transaction did not "alter creditors' rights, dispose of assets, and release claims to the extent proposed in the wide-ranging transaction disapproved in" *Braniff*).  In fact, the Debtor has left all of those matters to a chapter 11 plan of liquidation or other procedure, which the Debtor will implement in the best interest of the creditors depending on the outcome of the Auction.

### D.    Notice of the Proposed Sale and Related Matters Is Reasonable Under the Circumstances.

The Debtor will serve the Sale Notice by U.S. or international mail, substantially in the form attached as Exhibit 2 to Exhibit A hereto, upon (a) the Office of the United States Trustee for the District of Utah; (b) all ECF notice parties; (c) the Debtor's entire mailing matrix; and (d) any persons that file with the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002.

Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify its creditors of the proposed Sale, disclosure of the time and place of the Auction, the terms and conditions of the Sale, and the deadline for filing any objections thereto.  The notices prepared by the Debtor contain the type of information required under Bankruptcy Rule 2002, and other relevant information.  This information will enable interested parties to participate in the Sale process, the Auction, and the Sale Hearing if they so choose.  Thus, the Debtor submits that adequate notice of the Sale

Motion, the Bid Procedures, and the Sale Hearing has been or will be provided.  *See, e.g., In re Delaware & Hudson Ry.*, 124 B.R. 169, 180 (Bankr. D. Del. 1991) (the disclosures necessary in a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

IV.    **<u>NOTICE</u>**

The Debtor has provided notice of this Motion to (a) the Office of the United States Trustee for the District of Utah; (b) the Sub-V appointed Trustee; (c) all ECF notice parties; and (d) the United States Internal Revenue Service.  In light of the nature of the relief requested in this Application, the Debtor respectfully submits that no further notice is necessary.

No prior application for the relief sought in this Motion has been made to this Court or any other court in connection with this Chapter 11 Case.

V.    **<u>CONCLUSION</u>**

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that this Court (a) enter the Bid Procedures Order, substantially in the form attached as <u>Exhibit A</u> hereto, approving the Bid Procedures and scheduling the Auction, Sale Hearing, and other calendar items and deadlines as specified in the Bid Procedures; and (b) approve, at subsequent hearing and after submission of the Sale Motion, the Sale of Debtor's assets to the Winning Bidder free and clear of all liens, claims, encumbrances, and other interests.

4868-1860-0009

DATED January 12, 2023.

/s/ Darren Neilson
Brian M. Rothschild
Darren Neilson
Simeon Brown
**PARSONS BEHLE & LATIMER**

*Attorneys for Peak Theory, Inc.*

4868-1860-0009

**EXHIBIT A**

**BID PROCEDURES ORDER**

4868-1860-0009

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF UTAH, GASDF DIVISION**

| | |
|---|---|
| | **CHAPTER 11** |
| In re: | |
| | Case No. 22-bk-23480-JTM |
| Peak Theory, Inc. | |
| | Chapter 11 |
| Debtor. | |
| | Chief Judge Joel T. Marker |

**ORDER**

**(A) SCHEDULING AN AUCTION AND SALE HEARING IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF
DEBTOR'S ASSETS;**

**(B) PRESCRIBING BID PROCEDURES AND CALENDAR FOR SALE
AND AUCTION PROCESS; AND**

**(C) APPROVING FORM AND SCOPE OF NOTICE OF BID
PROCEDURES, AUCTION, AND SALE HEARING; AND**

Upon the motion (the "**Sale Motion**")[4] filed by Peak Theory, Inc., d/b/a Cubcoats, the

above-captioned debtor and debtor-in-possession (the "**Debtor**"), under sections 105, 361, 362,

363, 364, 1107, and 1108 of Title 11 of the United States Code (the "**Bankruptcy Code**") and

Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")

---

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4868-1860-0009

for entry of orders (a) scheduling an auction and sale hearing in connection with the sale of substantially all Debtor's assets (the "**Sale**"), (b) prescribing bid procedures for the sale attached as Exhibit 1 hereto (the "**Bid Procedures**"), (c) approving the form and scope of notice of the Bid Procedures, auction, and sale hearing, and (d) approval, at subsequent hearing, of the Sale of Debtor's assets to purchaser free and clear of all liens, claims, encumbrances, and other interests; and the Court, having reviewed the Motion and having heard the statements of counsel in support of the relief requested in the Sale Motion at the hearing before the Court (the "**Bid Procedures Hearing**"), and finding that the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, that this is a core matter under 28 U.S.C. § 157(b)(2), that notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given; and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm to the Debtor's estate,

THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1. The Sale Motion is GRANTED as provided herein.

    a. The Bid Procedures, attached as Exhibit 1 hereto, are approved in their entirety. The Debtor is authorized to solicit qualified bids and conduct an auction in accordance with the Bid Procedures.

    b. The form of Notice of the Sale and the Bid Procedures, attached as Exhibit 2 hereto, is approved in its entirety.

2. Following the Auction, the Court will hold a hearing on whether to approve the proposed sale on February 27, 2023, at 2:00 p.m. (Prevailing Utah Time) at the United States

4868-1860-0009

Bankruptcy Court, Frank E. Moss, U.S. Courthouse, 350 South Main Street, Courtroom 341, Salt

Lake City, Utah 84101.  Any party in interest objecting to the proposed sale must file an objection

so that it is received no later than February 22, 2023, at 5:00 p.m. (Prevailing Utah Time) (the

"**Objection Deadline**") by filing such objection with the Bankruptcy Court and sending such

objection to (1) counsel to the Debtor, **PARSONS BEHLE & LATIMER**, 201 S. Main St., Ste 1800,

Salt Lake City, Utah (Attn: Darren Neilson, Esq.) and DNeilson@parsonsbehle.com; and (2) the

Office of the United States Trustee, 405 So. Main Street, Suite 300, Salt Lake City, UT 84111.  If

no objections are filed to the Motion prior to the Objection Deadline, this Court may enter an order

approving the sale without holding the Final Hearing.  Rule 6003 of the Bankruptcy Rules has

been satisfied to the extent applicable.

    3.    Notwithstanding Bankruptcy Rules 6004, 7062, or 9014, the terms and conditions

of this Order shall be immediately effective upon its entry.

    4.    The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

###

**[END OF DOCUMENT]**

**EXHIBIT 1**

**<u>Bid Procedures</u>**

## **BID PROCEDURES**

Peak Theory, Inc., d/b/a Cubcoats, debtor and debtor-in-possession (the "**Debtor**") has filed a Chapter 11 case pending in the United States Bankruptcy Court for the District of Utah (the "**Bankruptcy Court**"), Case No. 22-bk-23480-JTM.  By motion dated January 12, 2023 (the "**Motion**"), the Debtor sought, among other things, approval of the process and procedures set forth below (the "**Bid Procedures**") to effectuate the sale of the Purchased Assets (the "**Transaction**").  The Bid Procedures are designed to facilitate a full, open, and fair bidding process to maximize the value of the Purchased Assets for the benefit of the Debtor's creditors and its bankruptcy estate.

On February 27, 2023, at 2:00 p.m. (Prevailing Utah Time), as further described below, the Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") at which time the Debtor shall seek entry of an order (the "**Sale Order**") authorizing and approving the sale of the Purchased Assets (the "**Proposed Sale**") to the Successful Bidder (defined below).

### **Asset Purchase Agreement**

The Debtor has prepared a form of an asset purchase agreement (the "**APA**" or "**Agreement**"), which contemplates a set of related transactions for the sale of the Purchased Assets to the Successful Bidder in consideration for the Purchase Price, all subject to the terms and conditions set forth in the APA.  The assets to be purchased as part of the Transaction do not include the Unacquired Assets.  The Transaction contemplated by the APA is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to Sections 363 and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**").

### **Participation Requirements**

In order to participate in the bidding process, each person (a "**Potential Bidder**") must first deliver (unless previously delivered) to Debtor's broker, no later than February 13, 2023, at 11:59 p.m. (Prevailing Utah Time), the following items (collectively, the "**Participation Requirements**"):

(a)    Confidentiality Agreement.  An executed confidentiality agreement in form and substance reasonably acceptable to the Debtor (each, a "**Confidentiality Agreement**");[5]

(b)    Identification of Potential Bidder.  Identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Transaction; and

---

[5] A form of Confidentiality Agreement can be obtained by contacting Debtor's counsel or Quiet Light Brokers, Debtor's Business Broker.

(c)    <u>Proof of Financial Ability to Perform</u>.  Written evidence that enables the Debtor to reasonably conclude that the Potential Bidder has the financial ability to close the contemplated Transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated Transaction.  Such information should include, *inter alia*, the following:

(i)    the Potential Bidder's current financial statements (audited if they exist); and

(ii)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor, demonstrating that such Potential Bidder has the ability to close the contemplated Transaction; <u>provided</u>, <u>however</u>, that the Debtor shall determine, in its reasonable discretion, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of the Potential Bidder's financial qualifications; <u>provided further</u>, <u>however</u>, that in lieu of a Potential Bidder's financial statements, the Debtor may accept other information that reasonably demonstrates the Potential Bidder's financial condition.

**<u>Designation as Qualified Bidder</u>**

A "**Qualified Bidder**" is a Potential Bidder that delivers the documents satisfying the Participation Requirements described in subparagraphs (a) - (c) above no later than February 13, 2023, 11:59 p.m. (Prevailing Utah Time), and that the Debtor determines is reasonably likely to submit a *bona fide* offer and to be able to consummate the Transaction if selected as a Successful Bidder (defined below).  As soon as is practicable, upon receipt of such documents, the Debtor shall notify the Potential Bidder that such Potential Bidder is a Qualified Bidder.

**<u>Bid Deadline</u>**

The deadline for submitting bids by a Qualified Bidder shall be no later than February 13, 2023, 11:59 p.m (Prevailing Utah Time) (the "**Bid Deadline**").  A Bid (as defined below) received after the Bid Deadline shall not constitute a Qualified Bid (as defined below), unless an exception is made by the Debtor in its sole and absolute discretion.

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation, or proposal (a "**Bid**") shall deliver written copies of its Bid through email to Debtors Business Broker, Ryan Condie at <u>ryan@quietlight.com</u>  (the "**Notice Party**") by the Bid Deadline.

**<u>Determination of Qualified Bid Status</u>**

To be eligible to participate in the bidding process, each Qualified Bidder must deliver to the Debtor a written offer to be received by the Bid Deadline and compliant with each of the following conditions:

(1)     <u>Modified Agreement</u>.  A Bid must include fully executed transaction documents, pursuant to which the Qualified Bidder proposes to effectuate the contemplated Transaction.  A Bid shall include a blacklined copy of the Agreement (the "**Modified Agreement**") against the form of APA attached as <u>Exhibit A</u> to the Sale Motion,[6] to show all changes requested by the Bidder, including those related to the Purchase Price.

(2)     <u>Purchased Assets</u>.  Each Bid must be for all of the Acquired Assets or such portion of the Acquired Assets or any other assets of the Debtor as the Qualified Bidder wishes to purchase; <u>provided</u>, <u>however</u>, that the aggregate purchase price in any Bid(s) for less than all of the Acquired Assets must equal or exceed the Minimum Initial Bid (defined below).

(3)     <u>Contingencies</u>.  A Bid may not be conditioned on obtaining internal approval, obtaining financing, or on the outcome or review of subsequent due diligence, but may be subject to the accuracy in all material respects at the Closing of specified representation and warranties or the satisfaction in all material respects at the Closing of specified conditions.

(4)     <u>No Fees payable to Qualified Bidder</u>.  A Bid shall not request or entitle the Qualified Bidder to any termination fee, expense reimbursement, or similar type of payment.

(5)     <u>Financing Sources</u>.  A Bid must contain evidence of the ability to consummate the Transaction satisfactory to the Debtor, with appropriate contact information for all such financing sources and may not contain any financing contingency.

(6)     <u>Minimum Initial Bid Requirement</u>.  Each Qualified Bidder's Bid shall have an initial minimum bid of $400,000 (the "**Minimum Initial Bid**").

(9)     <u>Back-Up Bid Commitment.</u>  Each Qualified Bidder's Bid shall include a binding commitment that the Bid will serve as a Back-Up Bid (defined below) in the event that the initially selected Successful Bidder is unable or unwilling to close the Sale.

(10)    <u>No Collusion</u>.  Each Qualified Bidder's Bid shall include a representation, made under the penalty of perjury, that it has not engaged in any collusion with respect to the bidding or the Sale.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtor's reasonable discretion and that satisfies the Bid Deadline requirement above, shall constitute a qualified bid (a "**Qualified Bid**").

---

[6] A Microsoft Word version of the APA can be obtained by contacting Debtor's counsel or Ryan Condie, the Debtor's business broker.

**Auction**

Only in the event that the Debtor receives an additional Qualified Bid by the Bid Deadline, the Debtor shall conduct an auction (the "**Auction**") of the Acquired Assets to determine the highest and otherwise best bid with respect to the Acquired Assets. No later than July 14, 12:00 p.m. (Prevailing Utah Time), the Debtor will notify all Qualified Bidders of (1) the highest Qualified Bid received by the Bid Deadline, which shall serve as the baseline bid at the Auction (the "**Baseline Bid**"). The Auction will commence at 10:00 a.m. (Prevailing Utah Time) on February 21, 2023, at the offices of **PARSONS BEHLE & LATIMER**, 201 S. Main St., Ste 1800, Salt Lake City, Utah and through video conference to be circulated prior to the Auction.

**Participation in the Auction**

Only (1) the Debtor and its counsel and professional advisors, (2) other Qualified Bidders and their counsel and professional advisors, (3) any creditors of the Debtor that has provided written notice to the Debtor's counsel at least five business days in advance of the Auction of his, her, or its intent to attend the Auction and their professional advisors, (4) representatives of the Office of the United States Trustee, and (5) the Subchapter V Trustee, shall be permitted to attend the Auction and only Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction. The Debtor and its professional advisors shall direct and preside over the Auction. Bidding at the Auction shall begin with an amount at least equal to the Baseline Bid plus the minimum Overbid. All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid (as defined below). Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

**Terms of Overbids**

An "**Overbid**" is any bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid. All Overbids shall include (and by making an Overbid, such Qualified Bidder is deemed to include) the same representations, commitments, terms and conditions as such Qualified Bidders first Qualified Bid unless expressly stated otherwise in writing to the Debtor and the Debtor's counsel at the auction. Any Qualified Bidder's initial Overbid shall be at least $30,000 in cash or cash equivalents in excess of the Baseline Bid, and each subsequent Overbid must be made in increments of at least $30,000 in cash or cash equivalents, or such other consideration that the Debtor deems equivalent or better than at least $30,000 in cash, over the previous highest or best bid. **The Overbid may also take into account assumption of any liabilities, if any, not just the Cash Purchase Price.**

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor accepts a higher Qualified Bid as an Overbid. The Debtor shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

**Closing the Auction**

Upon conclusion of the bidding process, the Auction shall be closed, and the Debtor shall (1) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale process, including those factors affecting the speed and certainty of consummating the Transaction and the amount of the cash (or cash equivalents) consideration, ease of obtaining approval of assumption and assignment, and other relevant factors (2) determine the highest or otherwise best offer for the Purchased Assets (the "**Successful Bid**"), the entity submitting such Successful Bid (the "**Successful Bidder**"), the next highest or otherwise best offer after the Successful Bid (the "**Back-Up Bid**"), and the entity submitting such Back-Up Bid (the "**Back-Up Bidder**"), and (3) advise the Qualified Bidders of such determinations. The Back-Up Bid shall remain open, and the Back-Up Bidder shall be required to fully perform under such Back-Up Bid, until the earlier of consummation of the Transaction with the Successful Bidder or thirty (30) days following the Closing Date set forth in the Successful Bid.

**Failure to Close**

In the event the Successful Bidder fails to consummate the Transaction as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtor shall be free to enter into a new purchase agreement with the Back-Up Bidder at the purchase price contemplated in the Back-Up Bid.

Following the approval of the Sale of the Purchased Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate the approved Sale within forty-five (45) days after entry of an order approving such Sale (subject to any required governmental constraints), the Debtor shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtor shall be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Bankruptcy Court.

**Consent to Jurisdiction as Condition to Bidding**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes among any Qualified Bidder and the Debtor relating to the Auction and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

**Acceptance of Successful Bid**

The Debtor shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such Qualified Bid. The Debtor will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing.

**Free of Any and All Interests**

As set forth in the Agreement, except as otherwise provided for therein or in another Successful Bidder's purchase agreement, all rights, titles, and interests in and to the Acquired Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "**Interests**"), in accordance with Section 363 of the Bankruptcy Code, with such Interests to attach to the proceeds received by the Debtor from the Sale (the "**Sale Proceeds**") less the amount of cash necessary to fund (1) any professional fee carve-out approved by the Court as part of use of cash collateral approved by the Court in this case (the "**Case**") and (2) such other wind-up costs as may be approved by the Court.

**Sale Hearing**

The Sale Hearing shall be conducted by the Bankruptcy Court on February 27, 2023, at 2:00 pm.

**Modifications**

The Debtor may modify or make exceptions to these Bid Procedures in its reasonable business judgment to facilitate an open and competitive auction and bidding process. Upon any such change, the Debtor shall provide reasonable notice under all the circumstances to all then-Qualified Bidders.

The Debtor with the help of its professional advisors and in its reasonable discretion may (1) determine which Qualified Bid, if any, is the highest or otherwise best offer and (2) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtor, its estate, and its creditors.

[END OF BID PROCEDURES]

4868-1860-0009

**EXHIBIT 2**

**<u>Sale Notice</u>**

Brian M. Rothschild, USB #15316
Darren Neilson, USB #15005
Simeon Brown, USB #17951
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
BRothschild@parsonsbehle.com
DNeilson@parsonsbehle.com
SBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Peak Theory, Inc.*

---

### IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF UTAH, GASDF DIVISION

| | |
|---|---|
| In re: | Case No. 22-bk-23480-JTM |
| Peak Theory, Inc. | Chapter 11 |
| Debtor. | Chief Judge Joel T. Marker |

---

### NOTICE OF BID DEADLINE, AUCTION, AND SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

---

NOTICE IS HEREBY GIVEN as follows:

1.      On January 12, 2023, the above-captioned debtor and debtor-in-possession (the "**Debtor**") filed a motion seeking approval of, among other things, (a) bid procedures (the "**Bid Procedures**") in connection with the sale (the "**Sale**") of substantially all of the Debtor's assets (the "**Purchased Assets**"), (b) the date, time, and place for a sale hearing (the "**Sale Hearing**") and for objections to the Sale, and (c) related relief with the United States Bankruptcy Court for the District of Utah (the "**Bankruptcy Court**").[7]

---

[7] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bid Procedures Order.

2.      The Debtor prepared a form of asset purchase agreement (the "**APA**" or "**Agreement**") for the sale of the Purchased Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon to the maximum extent permitted by Section 363 of the Bankruptcy Code.  As set forth in the Bid Procedures, the sale of the Purchased Assets is subject to competing offers from any prospective bidder that submits a Qualified Bid.

3.      All interested parties are invited to submit a Qualified Bid and to make offers to purchase the Purchased Assets in accordance with the terms of the Bid Procedures and the Bid Procedures Order. The deadline to submit materials compliant with the Participation Requirements is February 13, 2023, 11:59 p.m.  The **Bid Deadline** is February 13, 2023, 11:59 p.m.  (Prevailing Utah Time).  Requests for any other information concerning the Bid Procedures or the Sale should be directed by written request to the undersigned Debtor's counsel.

4.      Under the Bid Procedures Order, in the event the Debtor receives one or more Qualified Bids on or before the Bid Deadline, the Debtor shall conduct the Auction for the purpose of determining the highest and best bid for the Purchased Assets.  Only (a) the Debtor and its counsel and professional advisors, (b) other Qualified Bidders and their counsel and professional advisors, (c) creditors of the Debtor that have provided written notice to the Debtor's counsel at least five (5) business days in advance of the Auction of his, her, or its intent to attend the Auction and their professional advisors, (d) representatives of the Office of the United States Trustee, and (e) the Sub-chapter V Trustee, shall be permitted to attend the Auction.  Only Qualified Bidders will be entitled to make subsequent Overbids at the Auction.  The Auction will be held commencing at 10:00 a.m. (Prevailing Utah Time) on February 21, 2023, at the offices of **PARSONS BEHLE & LATIMER** located at 201 S, Main St., Ste 1800, Salt Lake City, Utah 84111, and through video conference to be provided prior to the Auction, or at such other place and time as the Debtor shall notify all parties that submitted Qualified Bids, or that are otherwise entitled to attend the Auction.

5.      The Court will hold a Sale Hearing on February 27, 2023, at 2:00 p.m. (Prevailing Utah Time) or such other time as the Bankruptcy Court shall determine, the Debtor intends to seek the Bankruptcy Court's approval of the sale of the Purchased Assets to the Successful Bidder at the Auction.  In determining the Successful Bidder, in addition to the amount of cash or cash equivalent consideration offered, the Debtor may consider, among other factors, the assumption of liabilities, if any, contemplated by each Qualified Bid.  The Sale Hearing will be held before the United States Bankruptcy Court for the District of Utah, 350 S. Main, 3rd Floor, Salt Lake City, Utah 84101, courtroom 341.

6.      At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this chapter 11 case. Objections, if any, to the Sale of the Purchased Assets pursuant to the terms of the agreement reached between the Debtor and the Successful Bidder shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the District of Utah, shall set forth the name of the objecting party, the nature and amount of any

4868-1860-0009

claims or interests held or asserted against the Debtor's estate or properties, the basis for the objection and the specific grounds therefore, and shall be filed with the Bankruptcy Court, and be served upon (a) counsel for the Debtor, **PARSONS BEHLE & LATIMER** located at 201 S, Main St., Ste 1800, Salt Lake City, Utah 84111 (Attn: Darren Neilson, Esq.) and DNeilson@parsonsbehle.com; (2) the Office of the United States Trustee, 405 So. Main Street, Suite 300, Salt Lake City, UT 84111 (Attn: Melinda Willden, Esq.) and Melinda.Willden@usdoj.gov; the Subchapter V Trustee, D. Ray Strong, 201 S. Main Street, Suite 450, Salt Lake City, UT 84111 and rstrong@thinkbrg.com, so as to be received on or before by 5:00 p.m. (Prevailing Utah Time) on or before February 22, 2023.

4868-1860-0009

**EXHIBIT B**

**ASSET PURCHASE AGREEMENT**

4868-1860-0009

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement") is made by and between Peak Theory, Inc. d/b/a Cubcoats ("Debtor" or "Seller"), on the one hand, and Cubcoats Acquisition Vehicle LLC or its assignee ("Purchaser"), on the other hand, for the sale and purchase of assets of the Debtor, on the terms and conditions set forth herein. Purchaser and Seller are referred to, collectively, as the "Parties" and each, individually, as a "Party."

## RECITALS

A.      On September 5, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 subchapter v of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), case no. 2:22-bk-23480-JTM (the "Bankruptcy Case").

B.      Purchaser desires to purchase from the Debtor, and the Debtor desires to sell to the Purchaser, certain assets, defined herein below as the "Acquired Assets," on the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties hereby agree as follows:

## AGREEMENT

1.      **Court Approval Required**.  This Agreement is subject to the approval of the Bankruptcy Court.  This Agreement may be altered by the Bankruptcy Court and any changes ordered by the Bankruptcy Court will supersede any contrary provision in this Agreement. Notwithstanding the foregoing, a material change to this Agreement will not be binding on Purchaser unless the Purchaser agrees in writing to such material change.  The Bankruptcy Court's order approving this Agreement is referred to herein as the "Sale Order."

2.      **Acquired Assets and Unacquired Assets.**  Seller agrees to sell, transfer and assign to Purchaser, and Purchaser agrees to purchase from Seller, all of Seller's right, title and interest in, to and under all of the Debtor's and its estate's assets, whether or not scheduled, including, but not limited to, all property of the Debtor and claims of the Debtor's estate within the meaning of title 11 of the United States Code (the "Acquired Assets"), excepting only the Debtor's cash on hand as of the Petition Date.  To the extent that the Acquired Assets include rights in litigation and/or pursuant to contracts under which the Debtor is a party, the Purchaser may elect not to purchase such assets and, if so, until 60 days after the Closing Date, designate such assets, or any other property of the Debtor or the Debtor's estate, as "Unacquired Assets." Seller's designation of Unacquired Assets shall be effected by Seller's filing of a notice of Unacquired Assets in the Bankruptcy Court and serving such notice only on the Debtor and other parties who receive electronic notice of filings in the case.  Any additional service of the notice of Unacquired Assets shall be provided by the Debtor.

3.    **Sale Free and Clear.**  The sale of the Acquired Assets shall be free and clear of all liens, interests, rights, and claims, if any, of any and all persons or entities, pursuant to section 363(f) of the Bankruptcy Code.  Without limiting the generality of the foregoing: (a) there shall be no successor liability to Purchaser, and (b) all creditors and equity interest holders of the Debtor will be enjoined from pursuing any claims against the Purchaser.

4.    **Payment of Purchase Price.**  In consideration of the sale, transfer, conveyance and assignment of the Acquired Assets to Purchaser, Purchaser agrees to pay Seller a total of $370,000 payable as follows (the "Purchase Price"):

a.    Payment of $200,000.00 due in full on the Closing Date; and

b.    Payment of $170,000.00 paid in 36 monthly installments of $4,722.22 per installment, with the first installment due by the 1st of the month occurring not less than 28 days after the Closing Date.

5.    **Stalking Horse.**  Purchaser will serve as the stalking horse bidder for the purchase and sale of the Debtor's assets under section 363 of the Bankruptcy Code.  If there is an overbidder, Purchaser may, but is not required to, participate in bidding.

6.    **Breakup Fee.**  In the event that there is a successful overbid, Purchaser shall receive $25,000.00 payable upon closing of the sale to the overbidder.

7.    **Sale Procedures and Milestones.**  Seller and Purchaser agree to comply with the following sale procedures (the "Sale Procedures") and milestones ("Milestones"):

a.    Seller shall fully cooperate with Purchaser in aiding Purchaser in conducting diligence by, inter alia, providing access to all information in its possession, custody or control. Purchaser, at the end of the Due Diligence Period, may advise the Seller in writing of its election to withdraw from this Agreement.  During the Due Diligence Period, based on Purchaser's diligence, Purchaser may offer adjustments to the Purchase Price, subject to acceptance of Seller.  Purchaser may, in its sole discretion, inform Seller in writing prior to the expiration of the Due Diligence Period that Purchaser wishes to proceed and waives this termination right.  In the event that the due diligence data provided by Seller to Purchaser has not been provided to Purchaser prior to the execution hereof, the Due Diligence Period shall commence only upon the receipt by Purchaser of all due diligence data.  Further, the Due Diligence Period shall only commence when Purchaser confirms in writing to Seller that the Due Diligence Period has commenced, and it shall expire 21 days after commencement unless extended by mutual agreement of the parties.

b.    At the earliest available date during the week of February 13-17, 2023, a Bankruptcy Court hearing will be held on a motion to approve the sale to Purchaser subject to qualified overbids ("Sale Hearing").

c.    A qualified overbidder must: (i) submit a written overbid at least five (5) business days prior to the Sale Hearing; (ii) confirm its agreement to all terms of this Agreement, with the only difference being price; and (iii) provide proof of financial ability to perform.

d.      The proposed sale will close on or before February 24, 2023 (the "Closing Date") after the entry of the Bankruptcy Court's order approving the sale (the "Sale Order"). The Debtor will request waiver of the stay of sale order under FRBP 6004(h).  The Debtor will provide a copy of the proposed Sale Order to the Purchaser for Purchaser's comment at least one week prior to the Closing Date.

e.      Within three (3) days after the Closing Date, the Debtor will deliver a bill of sale to Purchaser, and Purchaser will pay balance of Purchase Price.  Additionally, if requested by Purchaser, for at least 180 days thereafter, Debtor will execute such additional documents as necessary to evidence the transfer of Acquired Assets from the Debtor to Purchaser.

f.      The Sale Procedures and Milestones provided in this paragraph are material terms, the breach of which will constitute a material breach of this Agreement.

8.      **Assignment**.  Purchaser reserves the right to assign any and all rights under this Agreement to any person or entity designated by Purchaser. This Agreement is binding upon and shall inure to the benefit of the Parties hereto, and their respective attorneys, agents, heirs, administrators, predecessors, successors and assigns.

9.      **Further Assurances.**  Each Party to this Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate the purpose of this Agreement.

10.      **Attorneys' Fees and Costs.**  Each Party shall bear its own attorneys' fees, court costs and related expenses incurred by or on behalf of said Party in connection with the preparation of this Agreement and seeking requisite approvals thereof.

11.      **Interpretation.**  This Agreement has been negotiated at arms' length, and between persons sophisticated and knowledgeable in matters dealt with in this Agreement. Accordingly, any rule of law, statute, legal decision or common law principle that would require interpretation of any ambiguities in this Agreement against the Party that has drafted it is not applicable, and is waived.  The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose and intent of this Agreement.

12.      **Jurisdiction.**  The Bankruptcy Court shall have jurisdiction to interpret and enforce the terms of this Agreement as a core matter.  Any action to enforce this Agreement shall be before a court of competent jurisdiction. This Agreement shall be construed pursuant to the laws of the State of California and the United States Bankruptcy Code.

13.      **Amendments.**  This Agreement may be amended or modified only by a written instrument executed by the parties hereto.

14.     **Notices.**  Notice shall be via email with copies sent via U.S. Mail, FedEx or UPS, as follows:

     a.    to Purchaser:

        c/o Danning, Gill, Israel & Krasnoff, LLP
        1901 Avenue of the Stars, Suite 450
        Los Angeles, CA 90067
        Attn: Zev Shechtman and Danielle Gabai
        Email: ZS@DanningGill.com, DGabai@DanningGill.com

     b.    to Seller:

        c/o Parsons Behle & Latimer
        P.O. Box 910970
        St. George, Utah 84791
        Attn: Darren Neilson and Brian Rothschild
        Email: DNeilson@parsonsbehle.com, BRothschild@parsonsbehle.com

15.     **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and other writings between the Parties.  No supplement, modification, waiver or termination of this Agreement shall be binding unless executed in writing by the Parties to be bound thereby.

16.     **Authority to Sign.**  The person signing below on behalf of each Party, and each Party, represents that the signing person has the authority to execute this Agreement on behalf of said Party, and that it is not necessary for any other Party to inquire further into the validity of execution or authority to execute.

17.     **Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Delivery of an executed counterpart to this Agreement by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

18.    **Expiration.**  This Agreement shall expire if not executed by both Parties by December 23, 2022, at 5:00 p.m. PST.


AGREED AND ACCEPTED:

PEAK THEORY, INC. d/b/a CUBCOATS


December  **23**, 2022          _____

By ZACHARY PARK, its PRESIDENT
("SELLER")


AGREED AND ACCEPTED:

CUBCOATS ACQUISITION VEHICLE LLC


December ___, 2022          _____

By FRANKIE ORDOUBADI, its MANAGER
("PURCHASER")


1701194.1  27101