Brian M. Rothschild, USB #15316
Darren Neilson, USB #15005
Simeon Brown, USB #17951
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
BRothschild@parsonsbehle.com
DNeilson@parsonsbehle.com
SBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Peak Theory, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Case No. 22-bk-23480-JTM |
| Peak Theory, Inc. | Chapter 11 |
| Debtor. | Chief Judge Joel T. Marker |

## DEBTOR'S MOTION REQUESTING ENTRY OF ORDER (A) AUTHORIZING THE SALE OF THE DEBTOR'S ASSETS TO PURCHASER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; AND (B) WAIVING THE 14-DAY STAY OTHERWISE APPLICABLE UNDER BANKRUPTCY RULES 6004 AND 6006

Peak Theory, Inc., d/b/a Cubcoats, the above captioned debtor and debtor in possession ("**Cubcoats**" or the "**Debtor**" or the "**Seller**"), by and through its undersigned counsel, hereby moves the Court (the "**Sale Motion**") under sections 105, 361, 362, 363, 364, 1107, and 1108 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order (the "**Sale**

Order") approving the sale of Debtor's assets free and clear of all liens, encumbrances, and other interests (collectively, "**Interests**"), except as set forth in the Asset Purchase Agreement (the "**APA**" or "**Asset Purchase Agreement**") in the form attached as <u>Exhibit A</u> hereto to the Purchaser under the terms of the APA.

This Sale Motion is supported by this Memorandum of Points and Authorities, the entire record before the Court in this case, and the arguments of counsel and other admissible evidence properly brought before the Court at the Sale Hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. <u>SUMMARY OF RELIEF REQUESTED</u>

On February 21, 2023, the Debtor held an auction through video conference (the "**Auction**") which was attended by four Qualified Bidders[1], including Cubcoats Acquisition Vehicle LLC (the "**Stalking Horse Bidder**"). After a successful Auction, Cubcoats Acquisition Vehicle, LLC was deemed the Winning Bidder. Under this Motion, the Debtor seeks an order approving the Sale of the Purchased Assets to the Stalking Horse Bidder (the "**Sale Order**") free and clear of all liens, claims, encumbrances, or other interests pursuant to sections 363(b), (f), (k) and (m) and 365 of the Bankruptcy Code and approving the assumption, assignment and sale of the Purchased Contracts (as defined in the APA) under section 365 of the Bankruptcy Code.

This Motion is supported by this Memorandum of Points and Authorities, the Declaration of Zac Park (the "**Park Declaration**") the entire record before the Court in this case, and the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing on this Sale Motion.

---

[1] A defined in the Order Approving Bid Procedures [Docket No. 44].

## II.    JURISDICTION AND BASES FOR RELIEF

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The Debtor's principal offices and principal place of business are within the District of Utah, and, therefore, venue is proper in this District under 28 U.S.C. §§ 1408(1) and 1409.

3.      The bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and rules 6003 and 6004 of the Bankruptcy Rules.

## III.    GENERAL BACKGROUND

4.      Founded in 2017, the Debtor is an innovative retail company that designs and produces character-based children's products and appeal.  Debtor's bestselling product is a 2-in-1 children's stuffed animal that transforms into a wearable shirt, jacket, or sweatshirt. The Debtor has a loyal following, positive brand awareness, access to e-commerce platforms, and great products.

5.      By late 2020, it was clear that Cubcoats was going to miss its revenue targets for the year.  To make matters worse, in anticipation of the 4th quarter sales, Cubcoats ordered a large quantity of inventory to sell through the fall/holiday season.  Unfortunately, the cargo ship holding Cubcoat's inventory was delayed due to a storm and arrived sporadically throughout January and February 2021. This caused a ripple effect and Cubcoats missed the 2020 holiday rush, which lost the Company a substantial portion of its anticipated revenue for 2020.  Furthermore, when the inventory did arrive, the inventory's invoice became due, and with the missed potential revenue, Cubcoats did not have adequate cash flow to pay for the late arrived inventory.  Finally, Mr. Park, who played a significant role in the management of the Debtor, as well as running all marketing

4893-7849-3524

aspects of the business, became abruptly ill near the end of 2020, and was diagnosed with a chronic auto-immune disease, which made it difficult to manage the company.

6.       Mr. Park spent most of 2021 and 2022 seeking buyers for the company.  There were many suitors for Cubcoats but simply put, the debt obligations of the company were too large, and Cubcoats strategy of growth ultimately outpaced the company.

7.       In order to stop collection activities and to pave the way for a sale of the business, on September 5, 2022 (the "**Petition Date**") the Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").  The primary purpose of the Debtor's Chapter 11 Case is to facilitate a sale of substantially all of the Debtor's assets through an orderly and competitive sale process.  Additional factual information specific to the Motion is set forth below.

III.       **BACKGROUND SPECIFIC TO THE BID PROCEDURES MOTION**

A.       **The Bid Procedures Motion, Notice to Parties in Interest, and the Auction.**

8.       On January 12, 2023, the Debtor submitted its motion requesting orders approving, among other things, scheduling an auction for the sale of the Debtor's assets, and establishing bid procedures (the "**Bid Procedures Motion**") (ECF 38).  The Debtor properly noticed the Bid Procedures Motion and related Notice of Hearing to all parties entitled to notice under Bankruptcy Rule 2002 (ECF 42).

9.       There was no objection to the Bid Procedures Motion and the Court entered the Order granting the Bid Procedures Motion (the "**Bid Procedures Order**"), approving the bid procedures and approving the Auction (ECF 44).

10.       Including the Stalking Horse Bidder, the Debtor received five Qualified Bidders.

11.     The day of the Auction, the Debtor was informed that one of the Qualified Bidders was no longer interested in participating at the Auction.

12.     The Auction commenced around 10:00 am (MST) on February 21, 2023.  In the end, the Stalking Horse Bidder was deemed to have bid the highest and best bid and it was determined that the Stalking Horse Bidder was the Winning Bidder with a total bid of $529,780.00, with $400,000 paid at closing and the remaining $129,780 to be paid in twenty-four equal monthly payments.

13.     Budsies PR, LLC, is the back-up bidder with a total bid of $575,000, with $150,000 paid at closing and $425,000 to be paid in twenty-four equal monthly payments (the "**Back-up Bid**").

14.     The Debtor believes that the Purchased Assets were successfully marketed and that the Auction was successful.  The Debtor further believes that the proposed Sale will maximize the value of the Debtor's assets.

15.     The Debtor proposes to sell substantially all of its assets to the Purchaser free and clear of all liens, claims, rights, interests and encumbrances except as specified in the APA, in accordance with sections 363(b), (f) and (k) of the Bankruptcy Code.

## LEGAL AUTHORITY AND ARGUMENT

The Sale is in the best interests of the Estate, and the Court should approve the Sale Motion. The Court should enter the Sale Order approving the Sale of the Debtor's assets free and clear of all Interests except as set forth in the APA to the Purchaser under the terms of the APA.

A.    **The Proposed Sale of the Purchased Assets Should Be Approved Under Section 363(b) of the Bankruptcy Code.**

The debtor, after notice and a hearing, may use, sell, or lease property, other than in the ordinary course of business.  11 U.S.C. § 363(b)(1).  A debtor's application of its sound business judgment in the use, sale, or lease of property is subject to great judicial deference.  *See, e.g.*, *Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 288-89 (B.A.P. 9th Cir. 2005) ("The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances. . . . Ordinarily, the position of the trustee [or debtor in possession] is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection."); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . whether the proffered business justification is sufficient depends on the facts of the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.") (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003) (finding that "a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction").

In  interpreting  section  363(b)(1)  of  the  Bankruptcy  Code,  courts  have  held  that  a transaction involving property of the estate generally should be approved where the debtor or trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business."  *In re Continental Airlines, Inc.*, 780 F.2d

1223, 1226 (5th Cir. 1986); *accord Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Walter*, 83

B.R. at 19-20; *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *Meyers*

*v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (approval where a sound business purpose

exists).   Among other factors, courts should consider the consideration to be paid, the financial

condition and needs of the debtor, the qualifications of the buyer, and whether a risk exists that the

assets proposed to be sold would decline in value if left in the debtor's possession.   *See Equity*

*Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp. of Am.)*, 492 F.2d 793, 794 (9th

Cir. 1974) (affirming court's finding that the proposed sale of the debtor's assets would be in the

best interest of the estate in light of impending deterioration of market value of debtor's assets).

It is the Debtor's business judgment that, after considering potential alternatives, the

proposed Sale of the Purchased Assets to the Purchaser is in the best interest of the Debtor, its

estate, and all stakeholders.   The Debtor is unable to sustain operations without further borrowing,

which is unavailable.   The proposed Sale will preserve the going-concern value of the Debtor's

business, yield a higher price than piecemeal liquidation or a shutdown.   The Purchase Price

obtained through Sale under the APA will provide the maximum value possible to the Debtor

under the current circumstances.

Overall, the proposed Sale's benefits greatly exceed those of any piecemeal liquidation,

which would yield no net consideration.   The proposed Sale is supported by sound business reasons

and is in the best interests of the Debtor and its estate.

In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary

course of business may be by private sale or by auction.   The Debtor sought and obtained authority

to conduct the Auction.   Including the Stalking Horse Bidder, the Debtor received five Qualified

Bidders. The day of the Auction, the Debtor was informed that one of the Qualified Bidders was no longer interested in participating at the Auction.

The Auction commenced around 10:00 am (MST) on February 21, 2023.  In the end, the Stalking Horse Bidder was deemed to have bid the highest and best bid and it was determined that the Stalking Horse Bidder was the Winning Bidder with a total bid of $529,780.00, with $400,000 paid at closing and the remaining $129,780 to be paid in twenty-four equal monthly payments.

Budsies PR, LLC, is the back-up bidder with a total bid of $575,000, with $150,000 paid at closing and $425,000 to be paid in twenty-four equal monthly payments (the "Back-up Bid").

The Debtor believes that the Purchased Assets were successfully marketed and that the Auction was successful.  The Debtor further believes that the proposed Sale will maximize the value of the Debtor's assets.

For the reasons set forth above, the Debtor respectfully requests entry of the Sale Order approving the Sale of the Debtor's assets free and clear of all Interests except as set forth in the APA to the Purchaser under the terms of the APA.

Section 363(f) of the Bankruptcy Code expressly authorizes a debtor to sell property outside the ordinary course of business "free and clear of any interest in such property of an entity" if any one of the five following conditions is met:

1.      applicable non-bankruptcy law permits sale of such property free and clear of such interest;

2.      such entity consents;

3.      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; and

4.      such interest is in bona fide dispute; or

5.      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Because section 363(f) of the Bankruptcy Code is written in the disjunctive, any one of these five conditions provides authority to sell the Purchased Assets free and clear of liens. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

Further, to the extent that any other party asserting an Interest receives notice of the Motion and does not file a written objection hereto, such party should be deemed to have consented to the proposed Sale of the Purchased Assets free and clear of its asserted Interest(s). *See In re Channel One Comm'cns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).

The Debtor submits that every other Interest in the Purchased Assets, if any, that is not a liability assumed by Purchaser will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will be adequately protected by either being assumed or paid at the time of Closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtor may possess with respect thereto.

In sum, this Court should approve the Sale of the Purchased Assets to the Purchaser free and clear of Interests under sections 363(f) and (k) of the Bankruptcy Code.

**B.     The Proposed Sale Is Not a *Sub Rosa* Plan.**

The proposed Sale under the Bid Procedures is not an impermissible *sub rosa* plan. The *sub rosa* plan objection is typically raised in a section 363(b) sale, where all or a substantial portion of the assets are being sold, where the proposed transaction has the effect of dictating the terms of a plan and thereby will "short circuit the requirements of chapter 11 for confirmation of a

reorganization plan." *Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983).

Here, the proposed Sale does not allow or disallow any claims, dictate the relative priority of claims, subordinate any claim, confirm or disallow any lien, or dictate the distribution of the proceeds among any of the Debtor's prepetition creditors or other stakeholders. *See, e.g., Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. by & Through Mabey (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 355 (5th Cir. 1997) (overruling a *sub rosa* plan objection because the proposed transaction did not "alter creditors' rights, dispose of assets, and release claims to the extent proposed in the wide-ranging transaction disapproved in" *Braniff*).  In fact, the Debtor has left all of those matters to a chapter 11 plan of liquidation or other procedure, which the Debtor will implement in the best interest of the creditors following the Sale.

## C.    **Notice of the Proposed Sale and Related Matters Was Proper and Sufficient under the Bankruptcy Rules and Reasonable Under the Circumstances.**

The Debtor served the following documents on all parties entitled to notice on January 13, 2023:

(a)    Debtor's Motion Requesting Orders (A) Scheduling an Auction and Sale Hearing in Connection with the Sale of Substantially All of the Debtor's Assets; (B) Prescribing Bid Procedures and Protections for Sale of Debtor's Assets; (C) Approving Form and Scope of Notice of Bid Procedures, Auction, and Sale Hearing; and (D) Approving, at Subsequent Hearing, of Sale of Debtor's Assets to Purchaser Free and Clear of All Liens, Claims, Encumbrances, and Other Interests;

(b)    Notice of Bid Deadline, Auction, and Sale Hearing in Connection with the Sale of Substantially all of the Debtor's Assets; and

(c)    Notice of Debtor's Motion Requesting Entry of Orders.

(*See* Certificate of Service, ECF 42.)

4893-7849-3524

Concurrent with the filing of this Sale Motion, the Debtor served the Sale Motion, the Notice of Successful Bidder, and the Notice of Hearing on all parties entitled to notice under Bankruptcy Rule 2002, including (a) the Office of the United States Trustee for the District of Utah; (b) all ECF notice parties; (c) the Debtor's entire mailing matrix; (d) the Subchapter V Trustee  appointed in this Chapter 11 Case; and (e) any persons that has filed with the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002.

Thus, the Debtor submits that adequate notice of the Sale Motion, the Bid Procedures, and the Sale Hearing has been or will be provided.  *See, e.g.*, *In re Delaware & Hudson Ry.*, 124 B.R. 169, 180 (Bankr. D. Del. 1991) (the disclosures necessary in a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

## NOTICE

No possessory trustee or examiner has been appointed in the Chapter 11 Case.  The Debtor has provided notice of this Motion to (a) the Office of the United States Trustee for the District of Utah; (b) all ECF notice parties; (c) the Debtor's entire mailing matrix; (d) the Subchapter V Trustee  appointed in this Chapter 11 Case; and (e) any persons that has filed with the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002.  In light of the nature of the relief requested in this Motion, the Debtor respectfully submits that no further notice is necessary.

No prior application for the relief sought in this Motion has been made to this Court or any other court in connection with this Chapter 11 Case.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that this Court enter the Sale Order approving the Sale of the Debtor's assets free and clear of all Interests except as set forth in the APA to the Purchaser under the terms of the APA.

DATED March 9, 2023.

/s/ Darren Neilson
Brian M. Rothschild
Darren Neilson
Simeon Brown
**PARSONS BEHLE & LATIMER**

*Attorneys for Peak Theory, Inc.*

**EXHIBIT A**

**ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, GASDF DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| Peak Theory, Inc. | Case No. 22-bk-23480-JTM |
| Debtor. | Chapter 11 |
| | Chief Judge Joel T. Marker |

## ORDER APPROVING DEBTOR'S MOTION REQUESTING ENTRY OF ORDER (A) AUTHORIZING THE SALE OF THE DEBTOR'S ASSETS TO PURCHASER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; AND (B) WAIVING THE 14-DAY STAY OTHERWISE APPLICABLE UNDER BANKRUPTCY RULES 6004 AND 6006

Upon the motion (the "**Sale Motion**")[2] filed by Peak Theory, Inc., d/b/a Cubcoats, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), under sections 105, 361, 362, 363, 364, 1107, and 1108 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of orders (a) the Sale of the Debtor's assets free and clear of all Interests as set forth in the APA to the Purchaser under the terms of the APA, and (b) waiving the 14-day stay otherwise applicable under Bankruptcy Rules 6004 and 6006, and finding that the Court has jurisdiction over

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4893-7849-3524

this matter under 28 U.S.C. §§ 157 and 1334, that this is a core matter under 28 U.S.C. § 157(b)(2), that notice of the Sale Motion and the Sale Hearing and all other notices were sufficient under the circumstances and that no further notice need be given; and the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein and it appearing that granting the relief requested in the Sale Motion, approval of the Sale, and the entry of this Sale Order are necessary and in the best interests of the Debtor, its estate, creditors, and other parties in interest; and upon the record of the Sale Hearing and this Chapter 11 Case; and after due deliberation thereon; and good cause appearing therefor,

IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Sale Motion is GRANTED as provided herein.

2.      The Debtor is hereby authorized to perform the transactions in the Asset Purchase Agreement, attached as Exhibit 1 hereto (the "**APA**") which is approved in its entirety.

3.      Paragraph 4 of the APA entitled "Payment of Purchase Price" is amended and updated to account for Purchaser's bid amounts at the Auction to the following:

> 4.      **Payment of Purchase Price**. In consideration of the sale, transfer, conveyance and assignment of the Acquired Assets to Purchaser, Purchaser agrees to pay Seller a total of $529,780.00 payable as follows (the "Purchase Price"):
>
> a.      Payment of $400,000.00 due in full on the Closing Date; and
>
> b.      Payment of $129,780.00 paid in 24 monthly installments of $5,407.50 per installment, with the first installment due by the 1st of the month occurring not less than 28 days after the Closing Date.

4.      This Court has jurisdiction over the Sale Motion and the transactions contemplated by the Sale Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(N).  Venue of this case and the Sale Motion is proper under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief sought in the Sale Motion are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014.

6.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and, to the contrary, sufficient and just cause to waive any such stay.

7.      As evidenced by the pleadings previously filed with this Court, and based on the representations of counsel at the Sale Hearing and the certificates of service accompanying the Sale Notice, (i) proper, timely, adequate, and sufficient notice of the Sale has been provided in accordance with sections 102(l), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014, the Local Rules of this Court, the procedural due process requirements of the United States Constitution; (ii) such notice was reasonable, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale is or shall be required.

8.      A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested in the Sale Motion has been afforded to all interested persons and entities, including without limitation, (i) all entities known to have expressed an interest in a transaction

with respect to the Debtor or the Purchased Assets (or any portion thereof); (ii) any entities known to have asserted any Interest in or upon the Purchased Assets; (iii) all federal, state, and local regulatory or taxing authorities or recording offices that have a reasonably known interest in the relief requested by the Motion; (iv) all parties to the APA and all related agreements; (v) the Office of the United States Trustee; (vi) all entities that have requested notice in accordance with Bankruptcy Rule 2002; (vii) the Subchapter V Trustee; and (viii) all other known equity holders and creditors of the Debtor.

9.    Each of the Debtor and Purchaser (i) have requisite entity power and authority to execute the APA and all other documents contemplated by the Sale Motion; (ii) have all of the requisite entity power and authority necessary to consummate the transactions contemplated by the Sale Motion and the APA; (iii) have taken all corporate action necessary to authorize and approve the Sale and the consummation by the Debtor and Purchaser, respectively, of the transactions contemplated thereby; and (iv) require no consents or approvals, other than those expressly provided for in the APA, to consummate such transactions.  The Debtor is the sole and lawful owner of the Purchased Assets to be sold pursuant to the APA.

10.    The Debtor has demonstrated sound business justifications under section 363(b) of the Bankruptcy Code with respect to the Sale and other transactions contemplated by the Sale Motion on the timeline set forth therein including among other things (a) to maximize the value of the Purchased Assets, the Sale must be accomplished within the time constraints set forth in the APA and this Sale Order because the Debtor's operations are not intrinsically profitable enough to sustain themselves absent financing or further investment; (b) claims against the Debtor's estate will be minimized as a result of the prompt consummation of a Sale; and (c) does not propose to

(i) impair or restructure existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtor; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) allow, disallow, subordinate, priority, or classify claims or equity interests, compromise controversies, or extend debt maturities.

11.    Purchaser is a purchaser in good faith, as that term is used in the Bankruptcy Code and court decisions thereunder and is entitled to the protections of section 363(m) of the Bankruptcy Code in that, inter alia, (a) the Debtor was free to deal with any other person interested in acquiring the Purchased Assets or any portion thereof; (b) Purchaser's offer was the subject of the opportunity for competitive bidding by any parties in interest as noticed in the Sale Notice, and no party in interest offered a higher or better offer; (d) Purchaser in no way induced or caused the chapter 11 filing by the Debtor; and (e) all payments to be made by Purchaser in connection with the Sale have been disclosed.

12.    Purchaser will be deemed to have acted in good faith, pursuant to section 363(m) of the Bankruptcy Code and entitled to the protections therein in closing the transactions contemplated by the APA after the entry of this Sale Order and in accordance with the APA. Furthermore, in the absence of a stay pending appeal, should Purchaser elect to close or otherwise perform after the entry of the Sale Order and in accordance with this APA while an appeal or motion for rehearing pertaining to the Sale Order is pending, Purchaser shall be entitled to the protections of section 363(m) of the Bankruptcy Code in the event this Sale Order or any authorization contained herein is reversed or modified on appeal.

13.     Neither Purchaser nor the Debtor has engaged in any conduct that would cause or permit the APA to be voided under section 363(n) of the Bankruptcy Code.  Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  The Purchase Price to be paid by Purchaser was not controlled by an agreement among potential bidders.  The transactions under the APA may not be avoided, and no damages may be assessed against Purchaser or any other party under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law.

14.     The consideration provided by Purchaser for the Purchased Assets (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; (iii) constitutes fair consideration and reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act, and section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia; and (iv) will provide a greater recovery for the Debtor's creditors and other interested parties than would be provided by any other practically available alternative.

15.     The opportunity to submit a higher and better offer given to all parties in interest as advertised by the Sale Notice and Sale Order was non-collusive, and substantively and procedurally fair to all parties in interest.

16.     The Debtor has articulated sound business reasons for performing the APA, assigning the Purchased Contracts and consummating the Sale as set forth in the Sale Motion outside of a plan of reorganization, and it is a reasonable exercise of the Debtor's business judgment to execute, deliver, and consummate the APA and the transactions contemplated thereby.

17.     The Purchased Assets shall be sold free and clear of all of the following (collectively, the "**Interests**"): mortgages, security interests, conditional sale or other retention agreement, pledges, liens (as that term is defined in section 101(37) of the Bankruptcy Code), claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, guaranties, debts, rights, contractual commitments, interests, judgments, demands, easements, charges, encumbrances, defects, options, rights of first refusal, other encumbrances, liens, and restrictions of any kind or nature whether imposed by agreement, understanding, law, equity, or otherwise, including, without limitation, (i) encumbrances that purport to give any party a right or option to effect any forfeiture, modification or termination of the Debtor's rights or interests in the Purchased Assets or the Purchaser's rights or interests in the Purchased Assets or (ii) in respect of taxes, in each case accruing, arising or relating to a period prior to the Closing.

18.     The transfer of the Purchased Assets to Purchaser pursuant to the Sale under the APA will, upon the occurrence of the Closing, vest in Purchaser all rights, title, and interest of the Debtor in the Purchased Assets, free and clear of all Interests. Purchaser shall not assume or become liable for any Interests in, or relating to, or against the Purchased Assets being sold by the Debtor, including for claims against the Debtor or successor liability.

19.     The transfer of the Purchased Assets to Purchaser pursuant to the Sale will be a legal, valid, and effective transfer of the Purchased Assets, shall vest Purchaser with all right, title, and interest of the Debtor to the Purchased Assets free and clear of any Interests. Purchaser shall not assume or become liable for any Interest relating to the Purchased Assets being sold by the Debtor except as set forth in the APA.

20.    All persons having Interests of any kind or nature whatsoever against or in the Debtor or the Purchased Assets shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such Interests against Purchaser, or its assets, property, successors, or assigns, or the Purchased Assets.

21.    The Debtor may sell the Purchased Assets to Purchaser free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  Those (i) holders of Interests and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the Sale of the Purchased Assets and the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

22.    The terms and conditions of the Sale and the APA, including the total consideration to be realized by the Debtor pursuant to the APA, are fair and reasonable, and the transactions contemplated by the APA are in the best interests of the Debtor, its creditors, and its estate.  A valid business purpose exists for the approval of the Sale and other transactions contemplated by the Sale Motion.

23.    The requirements of sections 363(b), 363(f) and 365 of the Bankruptcy Code and any other applicable law relating to the Sale of the Purchased Assets have been satisfied.

24.    A reasonable opportunity has been afforded to all interested parties to make a higher or better offer to purchase the Purchased Assets.

25.    Approval at this time of the Sale, the APA, and all the transactions contemplated thereby and hereby is in the best interests of the Debtor, its creditors, its estate, and other parties in interest.

26.    Purchaser has the financial capability to fulfill the obligations contemplated under the APA.

27.    The transactions contemplated under the APA do not amount to a consolidation, merger or *de facto* merger of Purchaser and the Debtor, there is no substantial continuity between Purchaser and the Debtor, there is no continuity of enterprise between the Debtor and Purchaser, Purchaser is not a mere continuation of the Debtor or its chapter 11 estate, and Purchaser does not constitute a successor to the Debtor or its chapter 11 estate.

28.    Purchaser has not assumed and shall not be liable for any liability of the Debtor except as provided in the APA and this Sale Order, and such liabilities and obligations are expressly excluded from the Sale of the Purchased Assets and shall remain (if at all) liabilities and obligations of the Debtor and its estate.

29.    Subject to the terms and conditions of the APA, time is of the essence in consummating the Sale.

30.    The relief requested in the Sale Motion is granted as provided in this Sale Order. Any prior written or oral objections to the Sale Motion or entry of this Sale Order are overruled in their entirety.

31.    Notice of the Sale Hearing was fair and adequate under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

32.     The Sale of the Purchased Assets and the consideration provided by Purchaser under the APA therefor is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

33.     Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code.

34.     The APA, substantially in the form attached hereto as Exhibit 1, and all terms and conditions thereof, are hereby approved.  Under section 363(b) of the Bankruptcy Code, the Debtor is authorized to consummate the Sale pursuant to and in accordance with the terms and conditions of the APA, without any further corporate authorization.  The failure specifically to include any particular provisions of the APA in this Sale Order shall not diminish or impair the effectiveness of such provisions, and the APA is, by this Sale Order, authorized and approved in its entirety.

35.     The Debtor is authorized and directed to fully assume, perform under, consummate, and implement the terms of the APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, this Sale Order and sale of the Purchased Assets contemplated thereby and hereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to Purchaser, or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the APA without any further corporate action or orders of this Court.  Purchaser may, in its sole discretion, consummate the transactions under the APA

at any time after the entry of this Sale Order (including immediately thereafter) by waiving all closing conditions set forth in the APA that have not been satisfied and by proceeding to close such transactions, without any notice to the Court, any pre-petition or post-petition creditor of the Debtor or any other party in interest.

36.    The Debtor and each other person or entity having duties or responsibilities under the APA, any agreements related thereto, or this Sale Order and their respective directors, officers, employees, members, agents, representatives, and attorneys are authorized and empowered, subject to the terms and conditions contained in the APA, to (a) carry out all of the provisions of the APA and any related agreements; (b) issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the APA, and any related agreements; (c) take any and all actions contemplated by the APA, any related agreements or this Sale Order; (d) issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents; and (e) to perform such other acts and execute and deliver such other documents, as are consistent with and necessary or appropriate to implement, effectuate, and consummate the APA, any related agreements and this Sale Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court.

37.    The Debtor shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable).  The Debtor is further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements or amendments necessary or appropriate

to effectuate the transactions contemplated by the APA, any related agreements and this Sale Order, including amended and restated certificates or articles of incorporation and bylaws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under applicable law as the Debtor may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Sale Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Utah and all other applicable business corporation, trust and other laws of the applicable governmental units with respect to the implementation and consummation of the APA, any related agreements and this Sale Order, and the transactions contemplated thereby and hereby.

38.    Effective as of the Closing Date, the Sale of the Purchased Assets by the Debtor to Purchaser shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and shall vest Purchaser with all right, title, and interest of the Debtor in and to the Purchased Assets, free and clear of all Interests of any kind, under section 363(f) of the Bankruptcy Code.

39.    As provided in section 363(n) of the Bankruptcy Code, the Sale of the Purchased Assets is not subject to avoidance, and no damages may be assessed against Purchaser or any other party because of the Sale.

40.    Except to the extent specifically provided in the APA or this Sale Order, upon the Closing, the Debtor shall be, and hereby is, authorized, empowered, and directed under sections 105 and 363(b) of the Bankruptcy Code to sell the Purchased Assets to Purchaser. The Sale of

Purchased Assets shall vest Purchaser with all right, title, and interest of the Debtor to the Purchased Assets free and clear of any and all Interests and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise.  Following the Closing Date, no holder of any Interests in the Purchased Assets shall interfere with Purchaser's use and enjoyment of the Purchased Assets based on or related to such Interests, or any actions that the Debtor may take in the chapter 11 cases, or any trustee in a subsequent chapter 7 case, and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the APA or this Sale Order.

41.    The provisions of this Sale Order authorizing the sale of the Purchased Assets free and clear of Interests shall be self-executing, and neither the Debtor nor Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  However, the Debtor and Purchaser, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any documents and instruments that either the Debtor or Purchaser deem necessary or appropriate to implement and effectuate the terms of the APA and this Sale Order.

42.    On or before the Closing Date, all parties holding Interests of any kind are authorized and directed to execute such documents and take all other actions as may be necessary

to release any Interests of any kind against the Purchased Assets and, as such Interests may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Interests in or against the Purchased Assets shall not have delivered to the Debtor prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Interests that the person or entity has with respect to the Purchased Assets, the Debtor is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to such Purchased Assets prior to the Closing, and Purchaser is authorized to execute and file such documents after Closing.

43.     To the greatest extent available under applicable law, Purchaser shall be authorized as of the Closing Date to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to Purchaser as of the Closing Date.

44.     All of the Debtor's interests in the Purchased Assets to be acquired by Purchaser under the APA shall be as of the Closing Date and upon the occurrence of the Closing transferred to and vested in Purchaser pursuant to the APA.  Upon the occurrence of the Closing, this Sale Order shall be considered and constitute for all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by Purchaser under the APA and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to Purchaser.

45.    Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

46.    Any monetary defaults arising under each Assumed Contract shall be deemed satisfied, pursuant to 11 U.S.C. § 365(b)(1) as all such cure amounts were zero.  The Debtor is hereby authorized and directed to assign to the Purchaser the Assumed Contracts except any executory contracts not designated by the Purchaser according to the procedures set forth in the Sale Motion.  The Purchaser shall designate all Assumed Contracts for assumption and assignment no later than 60 days after the Closing Date.  The Purchaser is not required to assume any of the Assumed Contracts.

47.    Upon assignment of the Assumed Contracts to the Purchaser at or subsequent to the Closing Date, no default shall exist under any of the Assumed Contracts and no counterparty to any such Assumed Contract shall be permitted to declare a default by or against the Purchaser under such assigned contract or otherwise take action against the Purchaser as a result of such assignment or the Debtor's financial condition, bankruptcy, or failure to perform any of their obligations under any of the Assumed Contracts.  Upon entry of this Sale Order and assumption and assignment of the Assumed Contracts, the Debtor and, by substitution, the Purchaser, shall be deemed in compliance with all terms and provisions of the assigned Assumed Contracts. Notwithstanding anything to the contrary in this Sale Order or the APA, no Assumed Contract will be assumed and assigned to the Purchaser until the Closing.

4893-7849-3524

48.    Notwithstanding anything herein to the contrary, nothing herein shall in any way affect or diminish any rights of the Debtor or any successor thereto (including any chapter 11 or chapter 7 trustee) with respect to obligations of Purchaser arising under the APA or this Sale Order. This Sale Order shall be binding on the Debtor and the Debtor's estate (including, in each case, following any conversion or dismissal of this case), any successor chapter 7 estate, any confirmed plan of reorganization or liquidation, and any chapter 7 or chapter 11 trustees appointed in this case.

49.    This Court retains and shall have exclusive jurisdiction to endorse and implement the terms and provisions of the APA, any amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, without limitation, retaining exclusive jurisdiction to (a) compel delivery of the Purchased Assets to Purchaser; (b) resolve any disputes arising under or related to the APA; (c) enforce the injunctions and releases contained within this Sale Order and (d) interpret, implement, and enforce the provisions of the APA and this Sale Order.

50.    The terms and provisions of the APA and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, and all parties in interest in this case (including the Debtor's creditors and equity holders) (collectively, the "**Debtor Parties**"), Purchaser, and each of the Debtor Parties' and Purchaser's respective affiliates, members, officers, directors, successors and permitted assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or any trustee(s), receiver(s) or similar person(s) under applicable non-bankruptcy law, as to which trustee(s), receiver(s) and person(s) such terms and provisions likewise shall be binding.

51.     The Debtor, with the agreement of the Purchaser, may make any non-material changes to the APA and any related agreements, documents, or other instruments, including modifications, amendments, or supplements agreed upon by the parties in accordance with the terms thereof, without further order of this Court.

52.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

**[END OF DOCUMENT]**

**EXHIBIT 1**

**ASSET PURCHASE AGREEMENT**

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement") is made by and between Peak Theory, Inc. d/b/a Cubcoats ("Debtor" or "Seller"), on the one hand, and Cubcoats Acquisition Vehicle LLC or its assignee ("Purchaser"), on the other hand, for the sale and purchase of assets of the Debtor, on the terms and conditions set forth herein.   Purchaser and Seller are referred to, collectively, as the "Parties" and each, individually, as a "Party."

## RECITALS

A.      On September 5, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 subchapter v of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), case no. 2:22-bk-23480-JTM (the "Bankruptcy Case").

B.      Purchaser desires to purchase from the Debtor, and the Debtor desires to sell to the Purchaser, certain assets, defined herein below as the "Acquired Assets," on the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties hereby agree as follows:

## AGREEMENT

1.      **Court Approval Required**.  This Agreement is subject to the approval of the Bankruptcy Court.  This Agreement may be altered by the Bankruptcy Court and any changes ordered by the Bankruptcy Court will supersede any contrary provision in this Agreement. Notwithstanding the foregoing, a material change to this Agreement will not be binding on Purchaser unless the Purchaser agrees in writing to such material change.  The Bankruptcy Court's order approving this Agreement is referred to herein as the "Sale Order."

2.      **Acquired Assets and Unacquired Assets.**  Seller agrees to sell, transfer and assign to Purchaser, and Purchaser agrees to purchase from Seller, all of Seller's right, title and interest in, to and under all of the Debtor's and its estate's assets, whether or not scheduled, including, but not limited to, all property of the Debtor and claims of the Debtor's estate within the meaning of title 11 of the United States Code (the "Acquired Assets"), excepting only the Debtor's cash on hand as of the Petition Date.  To the extent that the Acquired Assets include rights in litigation and/or pursuant to contracts under which the Debtor is a party, the Purchaser may elect not to purchase such assets and, if so, until 60 days after the Closing Date, designate such assets, or any other property of the Debtor or the Debtor's estate, as "Unacquired Assets." Seller's designation of Unacquired Assets shall be effected by Seller's filing of a notice of Unacquired Assets in the Bankruptcy Court and serving such notice only on the Debtor and other parties who receive electronic notice of filings in the case.  Any additional service of the notice of Unacquired Assets shall be provided by the Debtor.

3.     **Sale Free and Clear.**  The sale of the Acquired Assets shall be free and clear of all liens, interests, rights, and claims, if any, of any and all persons or entities, pursuant to section 363(f) of the Bankruptcy Code.  Without limiting the generality of the foregoing: (a) there shall be no successor liability to Purchaser, and (b) all creditors and equity interest holders of the Debtor will be enjoined from pursuing any claims against the Purchaser.

4.     **Payment of Purchase Price.**  In consideration of the sale, transfer, conveyance and assignment of the Acquired Assets to Purchaser, Purchaser agrees to pay Seller a total of $370,000 payable as follows (the "Purchase Price"):

a.     Payment of $200,000.00 due in full on the Closing Date; and

b.     Payment of $170,000.00 paid in 36 monthly installments of $4,722.22 per installment, with the first installment due by the 1st of the month occurring not less than 28 days after the Closing Date.

5.     **Stalking Horse.**  Purchaser will serve as the stalking horse bidder for the purchase and sale of the Debtor's assets under section 363 of the Bankruptcy Code.  If there is an overbidder, Purchaser may, but is not required to, participate in bidding.

6.     **Breakup Fee.**  In the event that there is a successful overbid, Purchaser shall receive $25,000.00 payable upon closing of the sale to the overbidder.

7.     **Sale Procedures and Milestones.**  Seller and Purchaser agree to comply with the following sale procedures (the "Sale Procedures") and milestones ("Milestones"):

a.     Seller shall fully cooperate with Purchaser in aiding Purchaser in conducting diligence by, inter alia, providing access to all information in its possession, custody or control. Purchaser, at the end of the Due Diligence Period, may advise the Seller in writing of its election to withdraw from this Agreement.  During the Due Diligence Period, based on Purchaser's diligence, Purchaser may offer adjustments to the Purchase Price, subject to acceptance of Seller.  Purchaser may, in its sole discretion, inform Seller in writing prior to the expiration of the Due Diligence Period that Purchaser wishes to proceed and waives this termination right.  In the event that the due diligence data provided by Seller to Purchaser has not been provided to Purchaser prior to the execution hereof, the Due Diligence Period shall commence only upon the receipt by Purchaser of all due diligence data.  Further, the Due Diligence Period shall only commence when Purchaser confirms in writing to Seller that the Due Diligence Period has commenced, and it shall expire 21 days after commencement unless extended by mutual agreement of the parties.

b.     At the earliest available date during the week of February 13-17, 2023, a Bankruptcy Court hearing will be held on a motion to approve the sale to Purchaser subject to qualified overbids ("Sale Hearing").

c.     A qualified overbidder must: (i) submit a written overbid at least five (5) business days prior to the Sale Hearing; (ii) confirm its agreement to all terms of this Agreement, with the only difference being price; and (iii) provide proof of financial ability to perform.

d.      The proposed sale will close on or before February 24, 2023 (the "Closing Date") after the entry of the Bankruptcy Court's order approving the sale (the "Sale Order"). The Debtor will request waiver of the stay of sale order under FRBP 6004(h).  The Debtor will provide a copy of the proposed Sale Order to the Purchaser for Purchaser's comment at least one week prior to the Closing Date.

e.      Within three (3) days after the Closing Date, the Debtor will deliver a bill of sale to Purchaser, and Purchaser will pay balance of Purchase Price.  Additionally, if requested by Purchaser, for at least 180 days thereafter, Debtor will execute such additional documents as necessary to evidence the transfer of Acquired Assets from the Debtor to Purchaser.

f.      The Sale Procedures and Milestones provided in this paragraph are material terms, the breach of which will constitute a material breach of this Agreement.

8.      **Assignment**.  Purchaser reserves the right to assign any and all rights under this Agreement to any person or entity designated by Purchaser. This Agreement is binding upon and shall inure to the benefit of the Parties hereto, and their respective attorneys, agents, heirs, administrators, predecessors, successors and assigns.

9.      **Further Assurances.**  Each Party to this Agreement shall execute all instruments and documents and take all actions as may be reasonably required to effectuate the purpose of this Agreement.

10.      **Attorneys' Fees and Costs.**  Each Party shall bear its own attorneys' fees, court costs and related expenses incurred by or on behalf of said Party in connection with the preparation of this Agreement and seeking requisite approvals thereof.

11.      **Interpretation.**  This Agreement has been negotiated at arms' length, and between persons sophisticated and knowledgeable in matters dealt with in this Agreement. Accordingly, any rule of law, statute, legal decision or common law principle that would require interpretation of any ambiguities in this Agreement against the Party that has drafted it is not applicable, and is waived.  The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purpose and intent of this Agreement.

12.      **Jurisdiction.**  The Bankruptcy Court shall have jurisdiction to interpret and enforce the terms of this Agreement as a core matter.  Any action to enforce this Agreement shall be before a court of competent jurisdiction. This Agreement shall be construed pursuant to the laws of the State of California and the United States Bankruptcy Code.

13.      **Amendments.**  This Agreement may be amended or modified only by a written instrument executed by the parties hereto.

14.    **Notices.**  Notice shall be via email with copies sent via U.S. Mail, FedEx or UPS, as follows:

     a.     to Purchaser:

          c/o Danning, Gill, Israel & Krasnoff, LLP
          1901 Avenue of the Stars, Suite 450
          Los Angeles, CA 90067
          Attn: Zev Shechtman and Danielle Gabai
          Email: ZS@DanningGill.com, DGabai@DanningGill.com

     b.     to Seller:

          c/o Parsons Behle & Latimer
          P.O. Box 910970
          St. George, Utah 84791
          Attn: Darren Neilson and Brian Rothschild
          Email: DNeilson@parsonsbehle.com, BRothschild@parsonsbehle.com

15.    **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and other writings between the Parties.  No supplement, modification, waiver or termination of this Agreement shall be binding unless executed in writing by the Parties to be bound thereby.

16.    **Authority to Sign.**  The person signing below on behalf of each Party, and each Party, represents that the signing person has the authority to execute this Agreement on behalf of said Party, and that it is not necessary for any other Party to inquire further into the validity of execution or authority to execute.

17.    **Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Delivery of an executed counterpart to this Agreement by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

18.    **Expiration.**  This Agreement shall expire if not executed by both Parties by December 23, 2022, at 5:00 p.m. PST.

AGREED AND ACCEPTED:

PEAK THEORY, INC. d/b/a CUBCOATS

December  **23**, 2022                      _____

By ZACHARY PARK, its PRESIDENT
("SELLER")

AGREED AND ACCEPTED:

CUBCOATS ACQUISITION VEHICLE LLC

December ___, 2022                      _____

By FRANKIE ORDOUBADI, its MANAGER
("PURCHASER")

1701194.1  27101                                5

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023, I caused or will cause a true and correct copy of the foregoing **DEBTOR'S MOTION REQUESTING ENTRY OF ORDER (A) AUTHORIZING THE SALE OF THE DEBTOR'S ASSETS TO PURCHASER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; and (b) WAIVING THE 14-DAY STAY OTHERWISE APPLICABLE UNDER BANKRUPTCY RULES 6004 AND 6006**

to be served by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

- Darren B. Neilson     dneilson@parsonsbehle.com
- Brian M. Rothschild     brothschild@parsonsbehle.com, ecf@parsonsbehle.com; docket@parsonsbehle.com
- Nicholas R. Russell     nrussell@roruss.com, paralegal@roruss.com; rorusslaw@gmail.com; srogers@roruss.com; la@roruss.com; r47264@notify.bestcase.com
- D. Ray Strong tr
  rstrong@thinkbrg.com, UT30@ecfcbis.com;drstrong@ecf.axosfs.com
- United States Trustee
  USTPRegion19.SK.ECF@usdoj.gov
- Melinda Willden tr on behalf of U.S. Trustee United States Trustee
  melinda.willden@usdoj.gov, Lindsey.Huston@usdoj.gov; James.Gee@usdoj.gov; Rinehart.Peshell@usdoj.gov; Rachelle.D.Armstrong@usdoj.gov; Brittany.Eichorn@usdoj.gov

## <u>US Mail</u>

To be sent by regular first class United States Mail, postage full pre-paid, addressed to

Debtor's mailing matrix attached hereto.

PARSONS BEHLE & LATIMER

/s/ Darren Neilson
Darren Neilson
*Attorneys for Peak Theory, Inc.*

Label Matrix for local noticing
1088-2
Case 22-23480
District of Utah
Salt Lake City
Thu Mar  9 20:29:25 MST 2023

400 Gallaria Parkway
SE Suite 300
Atlanta, GU 30339-5980

Alex Park
9314 W Russell Rd
unit 340
Las Vegas, NV 89148-1535

Jon Allen
Ampleo
3300 Triumph Blvd
Suite 100
Lehi, UT 84043-5046

Amazon (Unit Storage & Product Shipping)
Legal Department
410 Terry Avenue North
Seattle, WA 98109-5210

Amerian Express Card
P.O. Box 981535
El Paso, tx 79998-1535

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

AppleTree Capital, LLC
3333 N. Digital Drive
Suite 430
Lehi, UT 84043-6695

Attanasio Revocable Trust dated November 1,
11100 Santa Monica Blvd.
Suite 2000
Los Angeles, CA 90025-3335

Attentive Mobile Inc.
221 River St, 9th Floor
Hoboken, NJ 07030-5990

Autumn Communications
8322 Beverly Blvd
Los Angeles, CA 90048-2600

Barun Law LLC
Barun Law Building, 92 gil 7
Teheran-ro, Daechi-dong, Gangnam-gu
Seoul, Korea

Bel Air Internet
15301 Ventura Blvd
Sherman Oaks, CA 91403-6603

CFO Solutions, LLC dba Amplo
13601 W McMillan Rd
#102 PMB 320
Boise, ID 83713-2071

Cathay Clothing (CFH Fashion)
3435 WILSHIRE BLVD
LOS ANGELES, CA 90010-1901

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Convyr
2301 E 7th
St e100
Los ANGELES, CA 90023-1037

DLA Piper
2000 Avenue of the Stars
Los ANGELES, CA 90067-4735

(p)CLOUDFUND LLC
400 RELLA BOULEVARD SUITE 165-101
SUFFERN NY 10901-4241

Disney
500 South Buena Vista Street
Burbank, CA 91521-0007

Dong Guan Plush
No.10 Yuanying Road
Zhuyuan
Liaobu Town, China

Dongguan Yi Kang Plush Toys Co, Ltd
227 Yanxi Rd
Zengbu Village, Chashan Town
Dongguan City, China

EUSU Logistics
7FL
147 Uisadang-daero
eongdeungpo-gu, Korea

Franchise Tax Board
Bankruptcy Section
MS A340
P.O. Box 2952
Sacramento CA 95812-2952

Greenhouse Software
575 Market Street
Suite #1750
San Francisco, CA 94105-2853

Hughes Marino
1450 Front Street
San Diego , CA 92101-3411

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o Robertson, Anschutz, Schneid, Crane
& Partners, PLLC 6409 Congress Avenue,
Suite 100, Boca Raton, FL 33487-2853

James Worldwide, Inc.
2301 Raymer Ave
Fullerton, CA 92833-2514

Jeff Kim
1904 Perry Ave
Apt A
Redondo Beach, CA 90278-1823

Jump450 Media Agency
300 Vesey St
New York, NY 10282-5803

Kinsella, Weitzman Iser Kump LLP
808 Wilshire Blvd
3rd floor
Santa Monica, CA 90401-1889

Kirkland & Ellis
2049 Century Park East
Suite 3700
Los Angeles , SC 90067-3211

L-Nutra, Inc.
5905 Legacy Dr. A500
Plano, TX 75024-4124


Legend Advance Funding II LLC
800 Brickell Avenue
Suite 902
Miami, FL 33131-2966

Legend Advance Funding II, LLC
800 Brickell Avenue
Suite 1502
Miami, FL 33131-2966

Lucasfilm Ltd. LLC
1 Letterman Dr.
San Francisco, CA 94129-1494


MAX IGL INC
1250 W Artesia Blvd
Compton, CA 90220-5306

Marisa Minasian
2659 Marquette Dr
Sacramento, CA 95826-2924

Matkov Clark PC
2618 San Miguel Dr
Pmb 418
Newport Beach, CA 92660-5437


Media One Products
829 Lincoln Ave.
Unit 3
West Chester, PA 19380-4474

Michael Neuman
100 Whilshire Blvd. Suite 2100
C/O Scott Carr
Santa Monica, CA 90401-1162

NBC Universal
100 Universal City Plaza
Universal City, CA 91608-1002


Nantong D&J (LA MIA Fashion)
JINRONGHUI NO 33
GONGNONG RD
Nantong , China

Darren B. Neilson
Parsons Behle & Latimer
201 S. Main Street
Suite 1800
Salt Lake City, UT 84111-2218

Nickelodeon (Viacom)
1515 Broadway New York
New York , NY 10003


Opentxt
2440 Sand Hill Road
Suites 301 & 302
Menlo Park, CA 94025-6900

Peak Theory Inc.
3030 South 3380 East
Salt Lake City, UT 84109-4225

Poston Denney & Killpack, PLLC
3400 Merlin Dr
Idaho Falls, ID 83404-7430


QVC, Inc
1200 Wilson Drive
West Chester, PA 19380-4262

Quiet Light Brokerage, Inc.
631 Brawley School Road
Suite 300
Mooresville, NC 28117-6212

Red Points
12 E 49th St
10th Floor
New York , NY 10017-1028


Reliant Funding
9540 Towne Centre Drive
Suite 200
San Diego, CA 92121-1996

Brian M. Rothschild
Parsons Behle & Latimer
201 S. Main St. Suite 1800
Salt Lake City, UT 84111-2218

Nicholas R. Russell
Rogers & Russell, PLLC
170 S. Main St.
Pleasant Grove, UT 84062-2631


Samuel Kim Custom House Broker
8939 S Sepulveda Blvd
Los Angeles, CA 90045-3631

Sanrio
2101 East El Segundo Boulevard
El Segundo, CA 90245-4520

Sifted (Formerly Veriship)
8880 Ward Pkwy
Kansas City, MO 64114-2762


D. Ray Strong tr
Berkley Research Group
201 South Main Street
Suite 450
Salt Lake City, UT 84111-2223

UPS
5 Glenlake Pkwy. Ne
Atlanta , GU 30328

United States Trustee
Washington Federal Bank Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111-3402

VLP Law Firm
555 Bryant Street
Suite 820
Palo Alto, CA 94301-1704

Velocity Group USA
576 Broadhollow Road
Melville, NY 11747-5002

Velocity Group USA, Inc.
Law Office of Douglas J. Bilotti PLLC
6 Holly Lane
St. James, NY 11780-4222


VendPulse
4197 W Cedar Hills Dr
Cedar Hills, UT 84062-9493

Veriship
8880 Ward Pkwy
Ste 300
Kansas City, MO 64114-9804

Warner Bros
4000 Warner Blvd
Burbank, CA 91522-0002


Westgate LaGrange Partners
2040 Armacost Ave
Los Angeles, CA 90025-6113

Melinda Willden tr
US Trustees Office
Washington Federal Bank Building
405 South Main Street
Suite 300
Salt Lake City, UT 84111-3402

Yichong Hu
1019 S. Westmoreland Ave
Apt. 103
Los Angeles, CA 90006-5850


Yotpo
400 Lafayette St New York
New York, NY 10003-6900

Zachary Ian Park
1799 S. Wasatch Dr.
Salt Lake City, UT 84108-3360

Zachary Park
3030 South 3380 East
Salt Lake City, UT 84109-4225



The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Chase Bank Credit Card
PO Box 15145
Wilmington, DE 19850

Delta Bridge Funding
18851 NE 29TH AVE
STE 700
AVENTURA, FL 33180

(d)JPMorgan Chase Bank, N.A.
10 S. Dearborn Street
Mail Code IL1-N42A
Chicago, IL 60603



The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Araon, Inc

(u)CFO Solutions LLC

(u)Clearco
10 WANLESS AVENUE
Toronto, A6 M4N 1V6


(u)Liz Daily

(u)SAE-A
SAE-A Bldg. 429 Yeongdong-daero
Gangnam-gu
Seoul , NE

(u)Sean Spear


(u)Shopify Capital
151 O'Connor Street
Ground Floor
Ottawa, K2P 2L8

End of Label Matrix
Mailable recipients    71
Bypassed recipients     7
Total                  78