**This order is SIGNED.**

**Dated: March 7, 2024**





**JOEL T. MARKER**
**U.S. Bankruptcy Judge**

Brian M. Rothschild, USB #15316
Darren Neilson, USB #15005
Simeon Brown, USB #17951
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
BRothschild@parsonsbehle.com
DNeilson@parsonsbehle.com
SBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Peak Theory, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Case No. 22-bk-23480-JTM |
| Peak Theory, Inc. | Chapter 11 |
| Debtor. | Chief Judge Joel T. Marker |

---

**ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION DATED JULY 21, 2023, AS MODIFIED**

---

The matter before the Court is the *Debtor's Second Amended Chapter 11 Plan of Liquidation Dated July 21, 2023* [Docket No. 66] (the "**Plan**"), filed by Peak Theory, Inc., the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**").

WHEREFORE, the Plan having been transmitted to creditors pursuant to the procedures approved by the Court;

WHEREFORE, the Court having entered separately its written *Findings and Conclusions Regarding Confirmation of Debtor's Plan of Reorganization Dated July 21, 2023* (collectively, the "**Findings and Conclusions**");

WHEREFORE, it having been determined, after hearing on notice, that all of the applicable requirements for confirmation set forth in 11 U.S.C. §§ 1129(a) and 1191(a) have been satisfied; and

WHEREFORE, based upon the Plan, the absence of any objections to the Plan, the Declaration of Zachary Park in Support of Confirmation of Plan of Reorganization [Docket No. 107] (the "**Park Declaration**"), the Declaration of Dane Clark in Support of Confirmation of Plan of Reorganization [Docket No. 108], the Ballot Tabulation Register and Supplemental [Docket Nos. 90 and 105] (the "Ballot Register"), and other papers filed concerning the Plan [e.g., Docket Nos. 62, 66, 74, and 77], as well as the arguments raised by the Debtor in the *Debtor's Memorandum in Support of Confirmation of Debtor's Chapter 11 Plan of Reorganization* [Docket No. 106] (the "Memorandum"), the Findings and Conclusions, and other matters of record, and good cause appearing, it hereby is

**ORDERED** that:

1.     **Plan Confirmed**.  The Plan shall be, and hereby is, CONFIRMED as expressly supplemented and modified by this Confirmation Order[1] (as supplemented and modified, the "**Plan**" or the "**Confirmed Plan**"). A copy of the Plan is attached hereto as Exhibit "1".

2.     **Status Report**. A status report on the reorganized debtor's various efforts to implement the Confirmed Plan shall be filed on the Docket no later than August 1, 2024.

---

[1] Capitalized terms used but not otherwise defined herein are defined in the Plan.

3.      **Resolving Inconsistency**.  In the event of any conflict or inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. Except as otherwise provided herein, the terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

4.      **Objections**. There are no objections to the confirmation of the Plan.

5.      **Effect of Confirmation**. As of the Effective Date of the Confirmed Plan, as authorized by the Plan and Bankruptcy Code §§ 1181(a), 1191(a), and 1141(d), all persons and entities hereby are enjoined permanently from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, its Estate, and/or the reorganized Debtor, on account of, or respecting any claims, interests, debts, rights, Causes of Action or liabilities discharged or released pursuant to the Confirmed Plan, except only to the extent expressly permitted under the Confirmed Plan or this Confirmation Order or the Bankruptcy Code.  All parties further are enjoined permanently from taking actions as provided under sections 11.a and 11.b of the Confirmed Plan, and as specified in Bankruptcy Code § 1141, except only to the extent expressly permitted under the Confirmed Plan or the Bankruptcy Code.

6.      **All Defaults Cured and Waived; All Notes and Obligations Decelerated and Treated as Set Forth in the Plan**. Pursuant to Bankruptcy Code §§ 1123(a)(5)(G) and 1124(2), among others, and except as otherwise expressly provided by the Plan, all defaults that existed or may have existed under any promissory note, loan document, unexpired lease, executory contract, or other written agreement of or by the Debtor shall be deemed cured and waived as of the Effective Date. All notes, instruments, or obligations for which payment obligations were accelerated prepetition and/or preconfirmation shall be decelerated as of the Effective Date and treated as set

forth in the Plan. All judicial and non-judicial foreclosure actions and proceedings that were instituted pre-petition and/or pre-confirmation shall be canceled, terminated, and/or deemed withdrawn and rescinded as of the Effective Date.

7.      **Revesting of Debtor's Property**. Except as otherwise provided in the Plan or in this Confirmation Order, on the Effective Date, in accordance with § 1141(b) and (c), all property of the Debtor and the Estate, and all other property dealt with by the Plan, shall be vested in the reorganized Debtor free and clear of all Liens, Claims and interests.

8.      **Assumed and Rejected Contracts**. As of the Effective Date, pursuant to section 8 of the Plan and §§ 365(a) and 1123(a)(5), the Debtor's assumption of any Assumed Contracts shall be, and hereby is, approved. The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the reorganized Debtor in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. The deemed "cure amount" for the Assumed Contracts is zero ($0) dollars. If the rejection of an executory contract or unexpired lease by the Debtor or the reorganized Debtor results in a claim for damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or its respective properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court on or before thirty (30) days following the Confirmation Date.

9.      **Implementation and Consummation of Plan**. In accordance with section 1142 of the Bankruptcy Code, the implementation and consummation of the Confirmed Plan in accordance with its terms shall be, and hereby is, authorized and approved, and the Debtor, the reorganized

Debtor, and any other person referenced in the Confirmed Plan shall be, and they hereby are, authorized, empowered and directed to issue, execute, deliver, file and record any documents, and to take any action necessary or appropriate to consummate the Confirmed Plan in accordance with its terms.

10.    **Final Decree**. A final decree or order closing the Case may be entered as soon as practicable, consistent with the terms set forth in section 10.5 of the Plan and Local Rule 3022-1.

11.    **Retention of Jurisdiction**. This Court shall retain exclusive jurisdiction, in accordance with the Plan and sections 105(a) and 1142 of the Bankruptcy Code, with respect to all matters arising in, arising under or related to the Bankruptcy Case or Plan, including but not limited to the matters described in Section 10 of the Plan.

12.    **Notice of Entry of Confirmation Order**. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), on or before the fifth Business Day following the date of entry of this Confirmation Order, the Debtor shall serve notice of entry of this Confirmation Order on all creditors with Allowed Claims, the United States Trustee and other parties-in-interest (except for creditors who do not have Allowed Claims), by causing such notice of entry to be delivered to such parties by CM/ECF notice and/or via first-class mail, postage prepaid. No other or further notice of entry of this Confirmation Order shall be necessary.

13.    **Notice of Effective Date to be Given by the Debtor**. Within ten days following the occurrence of the Effective Date, the reorganized Debtor shall file notice of the occurrence of the Effective Date with the Court. The reorganized Debtor may, but is not required to, provide notice of its intent to close the Case together with the notice of the Effective Date. No other or further notice of the Effective Date shall be necessary. All applications for allowance of Administrative Claims other than (a) fees and expenses of Professionals Allowed pursuant to a

prior Final Order of the bankruptcy Court, and (b) fees and charges assessed against the Estate

pursuant to 28 U.S.C. §1930, must be filed within 30 days after the Effective Date, or they shall

be barred.

-----------------------------------------------END OF DOCUMENT----------------------------------------

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing Order shall be served to the parties and in the manner designated below:

**By Electronic Service**: I certify that the parties of the record in this case as identified below, are registered CM/ECF users and will be served notice of entry of the foregoing Order through the CM/ECF system:

- Darren B. Neilson dneilson@parsonsbehle.com
- Brian M. Rothschild brothschild@parsonsbehle.com, ecf@parsonsbehle.com; docket@parsonsbehle.com
- Nicholas R. Russell nrussell@roruss.com, paralegal@roruss.com; rorusslaw@gmail.com; srogers@roruss.com; la@roruss.com; r47264@notify.bestcase.com
- D. Ray Strong tr rstrong@thinkbrg.com, UT30@ecfcbis.com; drstrong@ecf.axosfs.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Melinda Willden tr melinda.willden@usdoj.gov, Lindsey.Huston@usdoj.gov; James.Gee@usdoj.gov; Rinehart.Peshell@usdoj.gov; Rachelle.D.Armstrong@usdoj.gov; Brittany.Eichorn@usdoj.gov

**By U.S. Mail**: In addition to the parties of record receiving notice through the CM/ECF system,

the following parties should be served notice pursuant to Fed R. Civ. P. 5(b):

Jon Allen
Ampleo
3300 Triumph Blvd, Suite 100
Lehi, UT 84043

CFO Solutions, LLC dba Amplo
13601 W McMillan Rd, #102 PMB 320
Boise, ID 83713

Quiet Light Brokerage, Inc.
631 Brawley School Road, Suite 300
Mooresville, NC 28117

/s/ Darren Neilson
Darren Neilson

# Exhibit 1

Brian M. Rothschild, USB #15316
Darren Neilson, USB #15005
Simeon Brown, USB #17951
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
BRothschild@parsonsbehle.com
DNeilson@parsonsbehle.com
SBrown@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Peak Theory, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Peak Theory, Inc.<br><br>    Debtor. | Case No. 22-bk-23480-JTM<br><br>Chapter 11<br><br>Chief Judge Joel T. Marker |

## DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF LIQUDATION DATED JULY 21, 2023

Peak Theory, Inc., d/b/a Cubcoats, the above captioned debtor and debtor in possession

("**Cubcoats**" or the "**Debtor**"), by and through its undersigned counsel, files and proposes the

following amended Plan of Liquidation (the "**Plan**") under Chapter 11, Subchapter V of Title 11

of the United States Code (the "**Bankruptcy Code**").

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

## 1.
## DEFINITIONS

### A. Rules of Interpretation, Computation of Time and Governing Law

a. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in the Plan to a contract, instrument, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections, Articles and Exhibits are references to sections, Articles and Exhibits of or to the Plan; (e) the words herein and hereto refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

b. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### B. Capitalized words not otherwise defined in this Plan have the following meanings:

a. **Administrative Expense Claim** means any Claim arising from the administration of the Debtor's Chapter 11 Case as provided in section 503 of the Bankruptcy Code or that is entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) fees and expenses of the Debtor's professionals Allowed pursuant to an Order of the Bankruptcy Court, and (b) all Allowed fees and expenses of the Subchapter V Trustee.

2

b. **Allowed or Allowance** means with respect to Claims (a) any Claim (i) for which a Proof of Claim has been timely filed on or before the applicable Claims Bar Date or (ii) that is listed in the Debtor's Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated whether or not a Proof of Claim has been timely filed; <u>provided that</u>, in each case, any such Claim shall be considered Allowed only if and to the extent thereof no objection to the allowance thereof has been filed by the Effective Date or such an objection has been withdrawn or the Claim has been thereafter Allowed by a final non-appealable order; or (b) any Claim Allowed pursuant to the Plan if not otherwise subject to a timely filed objection. Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

c. **Assets** means any and all real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Causes of Action and any other general intangibles of the Debtor or Liquidating Debtor, as the case may be, of any nature whatsoever, including, without limitation, all property of the Estate.

d. **Avoidance Action** means all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or its estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548,549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code and other similar state law claims and causes of action.

e. **Bankruptcy Code** means title 11 of the United States Code as in effect on the Petition Date.

f. **Bankruptcy Court** means the United States Bankruptcy Court for the District of Utah.

g. **Cash** means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof.

h. **Chapter 11 Case** means this Case No. 22-bk-23480-JTM commenced under Subchapter V of Chapter 11 of the Bankruptcy Code in the Bankruptcy Court on the Petition Date.

i. **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

4880-3985-4146

j. **Claims Bar Date** means (a) March 6, 2023, for a Proof of Claim filed by a government unit, (b) 30 days after the Effective Date for all Administrative Expense Claims; (c) 10 days after the entry of the Confirmation Order or any order approving rejection of an executory contract for all Claims arising from the rejection of an executory contract; and (d) November 14, 2022, for a Proof of Claim for all other Claims.

k. **Collateral** means the interest of a Holder of a Secured Claim in property of the Debtor but only to the extent that such property Securing a Secured Claim properly attached and was perfected by a valid pre-Petition Date Security Interest that is otherwise unavoidable and only to the extent of value in the property in excess of the Secured Claims of all more senior Security Interests.

l. **Confirmation Date** means the date that the Confirmation Order becomes a final, non-appealable order and on which no stay of the Confirmation Order is in effect.

m. **Confirmation Hearing** means the hearing that is scheduled by the Bankruptcy Court to consider confirmation of the Plan as it may be convened and continued by the Bankruptcy Court from time to time.

n. **Confirmation Order** means the order entered by the Bankruptcy Court confirming the Plan.

o. **Debtor** means the chapter 11 debtor in this case, Peak Theory, Inc., both before and after the Effective Date.

p. **Debtor Causes of Action** means all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, arising on, prior to, or after the Petition Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, including Avoidance Actions, asserted, or which may be asserted, by or on behalf of the Debtor and/or the Debtor's estate, whether or not pending on the Effective Date or prosecuted thereafter against any person, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted.

q. **Disallowed** means a Claim (a) with respect to which the Bankruptcy Court has entered a final non-appealable order that such Claim is disallowed (b) not found in the Debtor's schedules by the Confirmation Date or (c) for which a Proof of Claim was not filed by the applicable Claims Bar Date.

r. **Disputed** means a Claim for which a Proof of Claim was filed prior to the applicable Claims Bar Date or which was marked "Disputed" in the Debtor's schedules that has not been Allowed or Disallowed by a final non-appealable order

4880-3985-4146

and as to which the Debtor or another party in interest has filed an objection or commenced an adversary proceeding prior to the Effective Date.

s. **Distribution** means Cash or Assets to be distributed to Holders of Allowed Claims under the Plan.

t. **Distribution Account** means mean a deposit account (which may be the current debtor-in-possession account) established and maintained by the Plan Administrator to hold the funds of the Debtor that are to be distributed to holders of Allowed Claims under the Plan. Such funds shall include the excess funds of the Debtor as of the Effective Date that are not needed to pay Allowed Administrative Expenses, Allowed Priority Tax Claims, and Plan Administrator Expenses, plus any additional net liquidation proceeds from the disposition by the Plan Administrator of any remaining property of the Estate and/or from the resolution by the Plan Administrator of any Causes of Action belonging to the Estate.

u. **Effective Date** shall mean the date which is thirty (30) days after the Confirmation Date, or if such date is not a Business Day, the next succeeding Business Day; *provided*, *however*, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Section 9 of the Plan have not been satisfied or waived, then the first Business Day immediately following the day upon which all such conditions have been satisfied or waived.

v. **Equity Interest** means the rights of the holders of the common stock of all classes issued or unissued by the Debtor and outstanding immediately prior to the Effective Date, and any options, warrants or other rights with respect thereto including all agreements for the payment of profits, issuance of further Equity Interests, or any other right held by any holder of an Equity Interest respecting the Debtor's common stock, and including any claim arising for rescission of the purchase or sale of an Equity Security of the Debtor to the extent it would be subordinated to the level of common stock under section 510(b) of the Bankruptcy Code.

w. **Holder** means the holder of a Claim or Equity Interest of the Debtor on the Voting Record Date, or, in the case of an Administrative Expense Claim, such later date on which such Administrative Expense Claim is Allowed.

x. **General Unsecured Claim** means any Claim that is not an Administrative Expense Claim, Priority Claim, Secured Claim, that is not given priority under section 507(a) of the Bankruptcy Code or otherwise or subject to subordination under section 510 of the Bankruptcy Code.

y. **Liquidating Debtor** means the Debtor and the Debtor in Possession, or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

z.  **Plan** means this Plan of Reorganization under Chapter 11, Subchapter V of the Bankruptcy Code.

aa. **Plan Administrator** means the Person or Entity designated by the Debtor prior to Confirmation to administer the Liquidating Debtor and liquidate the Remaining Assets in accordance with the Plan. The Debtor shall identify the Person or Entity to serve initially as Plan Administrator, and the terms and conditions of such Person or Entity's employment, no fewer than five (5) business days prior to the Confirmation Hearing.

bb. **Plan Administrator Expenses** shall mean the expenses of the Plan Administrator incurred in the Plan Administrator's administration of the Debtor.

cc. **Petition Date** means September 5, 2022.

dd. **Priority Claim** means a Claim that is entitled to priority in payment under section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

ee. **Priority Tax Claim** means a Claim that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code; provided, however, that any Claim on account of any penalty arising with respect to or in connection with a Priority Tax Claim that does not compensate the Holder for actual pecuniary loss shall be treated as a General Unsecured Claim.

ff. **Proof of Claim** means a proof of claim filed with the Bankruptcy Court.

gg. **Subchapter V Trustee** means D. Ray Strong, the trustee appointed under section 1183 of the Bankruptcy Code and any successor trustee under Subchapter V.

hh. **Subordinated Claim** means all Claims subject to subordination under section 510 of the Bankruptcy Code and with respect to which a final non-appealable order of the Bankruptcy Court has been entered determining that such Claim is subject to subordination under section 510 of the Bankruptcy Code; provided, however, that any proceeding to determine that a Claims is subject to subordination under section 510 of the Bankruptcy Code must be commenced prior to the Confirmation Date.

ii. **Secured** or **Security Interest** means a Claim that is secured by a lien on property in which the Debtor has an interest or that is subject to a valid right of setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Debtor's interest in such property or to the extent of the amount subject to such valid right of setoff, as applicable, as determined under section 506 of the Bankruptcy Code.

jj. **Unsecured** means a Claim against the Debtor that is not Secured.

kk. **Unsecured Deficiency Claim** means the amount of a Claim to the extent it exceeds the value of the Collateral.

**2.**
## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

a. **Non-Classification**. As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on or receiving distributions under the Plan. All such Claims are instead treated separately in accordance with the terms in this Article II.

b. **Administrative Expense Claims**.

i. <u>General</u>. Except as otherwise agreed to by the Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the later of (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms, and (ii) the Effective Date. If the Debtor disputes any portion of an Administrative Expense Claim, the Debtor shall pay such Claim within thirty (30) days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim.

ii. <u>U.S. Trustee's Fees</u>. There are no U.S. Trustee's fees in this Bankruptcy Case under Subchapter V.

iii. <u>Professional Compensation and Expense Reimbursement Claims</u>.

(a) Each Professional shall file a final application for the allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date within thirty (30) days after the Effective Date. Any award of compensation or reimbursement granted by the Bankruptcy Court shall be paid (i) within fifteen (15) days of the entry of the order of the Bankruptcy Court approving such award, unless a stay is obtained, or (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtor.

(b) All fees and expenses of Professionals for services rendered after the Effective Date in connection with the Bankruptcy Case and the Plan (including those on behalf of the Plan Administrator) shall be paid by the Plan Administrator subject to the terms and procedures agreed to by Plan administrator and Debtor without the need for further Bankruptcy Court order or authorization.

c. **Priority Tax Claims**. At the sole election of the Plan Administrator, each holder of an Allowed Priority Tax Claim shall be paid either one of the following: (a) upon such terms as may be agreed to between the Debtor (prior to the Effective Date) or the Plan Administrator (on or after the Effective Date) and such holder of an Allowed Priority Tax Claim; (b) in full in Cash on the later of the Effective Date or the date that such Allowed Priority Tax Claim would have

7

been due if the Bankruptcy Case had not been commenced; or (c) in regular annual installment payments over a period ending no later than five (5) years after the Petition Date, in accordance with Bankruptcy Code Section 1129(a)(9)(C).

**3.**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

Claims, other than Administrative Expense Claims and Priority Tax Claims, shall be classified for all purposes, including voting on, confirmation of, and distribution pursuant to the Plan, as follows:

Class 1 - <u>Priority Claims</u>.  Class 1 shall consist of all Priority Claims that are Allowed against the Debtor.

Class 2 – <u>Secured Claim of AppleTree Capital, LLC</u> . Class 2 consists of the secured claim of AppleTree Capital, LLC ("**AppleTree**") that arises from that certain Peak Theory Inc. Secured Promissory Note dated November 22, 2019, but which was not perfected by a filed UUC-1 until April 19, 2021 as well as various Copyright Mortgages filed with the United States Copyright Office on or about April 13, 2021.

Class 3 – <u>Secured Claim of Attanasio Revocable Trust dated November 1, 1996</u>.  Class 3 consists of the secured claim of Attanasio Revocable Trust dated November 1, 1996 ("**Attanasio Trust**") that arises from that certain Peak Theory Inc. Secured Promissory Note dated November 22, 2019, but which was not perfected by a filed UUC-1 until April 19, 2021 as well as various Copyright Mortgages filed with the United States Copyright Office on or about April 13, 2021.

Class 4 – <u>General Unsecured Claims</u>.  Class 4 shall consist of all General Unsecured Claims that are Allowed against the Debtor.

Class 5 - <u>Equity Interests</u>.  Class 5 shall consist of all Equity Interests in the Debtor.

**4.**
**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

a.      **Class 1 - Priority Claims**.

i.      <u>Impairment and Voting</u>.  Class 1 is impaired under the Plan. Holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan.

ii.      <u>Distributions</u>.  The Plan Administrator shall pay holders of Allowed Class 1 Claims, in full satisfaction of their Claims, in accordance with section 1129(a)(9) of the Bankruptcy Code, either (i) deferred cash payments beginning on the Effective Date of a value equal to the Allowed amount of such Priority Claim; or (ii) regular cash annual installment payments over a period ending no later than 5 years after the Effective Date equal to the Allowed amount of such Priority Claim.

8

b.     **Class 2 – Secured Claim of AppleTree**.

i.     <u>Impairment and Voting</u>.  Class 2 is impaired under the Plan.  Holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Plan.

ii.     <u>Distributions</u>.  The Plan Administrator shall pay AppleTree the total amount of its claim not to exceed $100,000 through the proceeds of the liquidation of its Collateral through the 11 U.S.C. § 363 brought by the Debtor.

c.     **Class 3 – Secured Claim of Attanasio Trust**.

i.     <u>Impairment and Voting</u>.  Class 3 is impaired under the Plan.  Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

ii.     <u>Distributions</u>.  The Plan Administrator shall pay Attanasio Trust the total amount of its claim not to exceed $200,000 through the proceeds of the liquidation of its Collateral through the 11 U.S.C. § 363 sale brought by the Debtor.

d.     **Class 4 – General Unsecured Claims**.

i.     <u>Impairment</u>.  Class 4 is impaired under the Plan.  Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

ii.     <u>Distributions</u>.  In full satisfaction of their Claims, Holders of Allowed Class 4 Claims shall be given their Pro Rata share of distributions as beneficiaries of the Liquidating Debtor. The Plan Administrator shall pay holders of Allowed Class 4 Claims their Pro Rata share as funds become available in the Distribution Account, subject to the Plan Administrator's discretion.  When the Bankruptcy Case is closed with the entry of the final decree, the Plan Administrator shall distribute the net amount available amount of their Pro Rata share of available funds.

iii.     <u>Transferees of Claims</u>.  In the event that a Person has become the transferee of a General Unsecured Claim that is Allowed after the Petition Date and before the date set by the Court for determining the identity of the holders of Claims entitled to vote on the Plan, such transferee shall be entitled to a separate vote pursuant to this Section for each such Allowed General Unsecured Claim.  In the event that a Person has become the transferee of an Allowed General Unsecured Claim after the Petition Date and before the Distribution Record Date, such

9

transferee shall be entitled to a distribution pursuant to this Section 4 for each such Allowed General Unsecured Claim.

    e.    **Class 5 – Equity Interest**.

        i.    Impairment. Class 5 is impaired under the Plan. On the Effective Date, all Equity Interests in the Debtor shall be cancelled. No holder of an Equity Interest in the Debtor shall receive or retain any property under the Plan.

        ii.    Voting. Each holder of an Equity Interest in the Debtor is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

## 5.
## MEANS FOR IMPLEMENTATION OF THE PLAN

    a.    **Administration of the Estate**. The Plan Administrator shall administer the Estate on and after the Effective Date. As of the Effective Date, all officers of the Debtor, will be deemed terminated. The Plan Administrator shall hold all rights, powers, and duties of a trustee of the Estate under Chapter 11 of the Bankruptcy Code. The Plan Administrator shall, within their reasonable discretion, manage the Estate's Assets and Causes of Action for the purpose of maximizing the value of the Estate and its effective administration. The Plan Administrator shall jointly reduce all property of the Estate and Causes of Action to Cash and distribute such Cash pursuant to the provisions of this Plan. The Plan Administrator shall use such Cash to pay the holders of Allowed Claims until such Cash is exhausted.

    b.    **Vesting of Property**. On the Effective Date, the Estate's Assets, without any further act or deed of the Plan Administrator or of the Bankruptcy Court, shall be transferred from the Debtor to the Plan Administrator, free and clear of all liens, Claims, and interests (except to the extent the Plan specifically provides otherwise. On and after the Effective Date, the Debtor shall execute and deliver such instruments and other documents as are necessary, appropriate or deemed advisable by the Plan Administrator, to transfer title to and ownership of the Estate Assets to the Plan Administrator.

    c.    **Vesting of Claims and Standing**. From and after the Effective Date, Claims and Causes of Action belonging to the Debtor, whether pending on the Effective Date or otherwise, without any further act or deed of the Plan Administrator or of the Bankruptcy Court, shall be transferred from the Debtor to the Plan Administrator, free and clear of all liens, Claims, and interests (except to the extent the Plan specifically provides otherwise. Thereafter, the Plan Administrator will have standing to initiate, pursue, abandon, or settle all Claims and Causes of Action formerly belonging to the Debtor, including Avoidance Actions, as if the Plan Administrator was the Debtor.

    d.    **Liquidation of Remaining Property of Estate**. Following the Effective Date, the Plan Administrator shall conduct an orderly liquidation of the remaining property of the Estate consistent with the terms of the Plan.

4880-3985-4146

e. **Successor Trustee**. In the event that the Plan Administrator resigns, becomes incapacitated, is disqualified, dies, or becomes otherwise unable or unwilling to continue to serve in such capacity, then a successor shall be appointed. In the event no successor is available, the Court shall appoint a successor Plan Administrator either *sua sponte* or upon motion of any interested party and notice to all creditors on the Debtor's mailing matrix.

f. **Employment of Professionals**. The Plan Administrator shall be the Person or Entity designated by the Debtor prior to Confirmation to administer the Liquidating Debtor and liquidate the remaining Assets in accordance with the Plan. The Debtor shall identify the Person or Entity to serve initially as Plan Administrator, and the terms and conditions of such Person or Entity's employment, no fewer than five (5) business days prior to the Confirmation Hearing. The Debtor anticipates that the Plan Administrator will engage professionals such as Parsons Behle and Latimer to assist based on their expertise and familiarity with and prior experience in the Bankruptcy Case.

g. **Termination of Plan Administrator**. Upon liquidation of all Assets, payment of all fees, expenses, taxes of the Liquidating Debtor, and final distributions to holders of Allowed Claims pursuant to the terms of Article IV, the Liquidating Debtor and the responsibilities of the Plan Administrator shall terminate.

h. **Destruction of Books and Records**. Upon termination of the Liquidating Debtor, the Plan Administrator may, without further order of the Bankruptcy Court, but subject to any applicable non-bankruptcy law relating to the retention of books and records, may destroy any books and records that the Plan Administrator determines are no longer necessary for the implementation of the Plan.

i. **Filing Final Tax Returns**. After the Effective Date, the Plan Administrator will prepare and timely file final tax returns for the Debtor. The Plan Administrator may employ professionals without further orders of the Court to assist him.

**6.**
**IMPLEMENTATION OF THE PLAN**

a. **Method of Distributions Under the Plan**.

i. __In General__. All distributions under the Plan to be made by the Plan Administrator to the holder of each Allowed Claim shall be mailed by United States First-Class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Plan Administrator has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. The Plan Administrator shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

11

ii.   <u>Form of Distributions</u>.   Any payment of Cash made by the Plan Administrator pursuant to the Plan shall be made by check; provided, however, that after the occurrence of the Effective Date, the Plan Administrator is not obligated to make any Cash payment under the Plan unless the payment exceeds fifty dollars ($50); provided, further, that Cash equal to 100% of the distributions to which the holder of a Claim would be entitled under the Plan if the payment to such holder was less than or equal to fifty dollars ($50) shall be maintained in a reserve for the benefit of such holder until an aggregate of at least fifty ($50) dollars is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.   The foregoing shall apply to interim distributions made by the Plan Administrator.   At the time of final distribution, the Plan Administrator shall make cash payments to the holder of a Claim if the amount is less than fifty dollars ($50) but greater than ten dollars ($10).

iii.   <u>Distributions to be on Business Days</u>.   Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

iv.   <u>Distributions to Holders as of the Distribution Record Date</u>.   As of the close of business on the Distribution Record Date, the claims register shall be closed.   The Plan Administrator shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

v.   <u>Withholding Taxes on Distributions</u>.   The Plan Administrator may, but is not obligated to, withhold from any Cash or property distributed under the Plan such amounts as the Plan Administrator is obligated under non-bankruptcy law to withhold and transmit to taxing authorities.

vi.   <u>Donation of *De Minimus* Amounts</u>.   In the event that the Plan Administrator has fully administered the estate and having Cash on hand in an amount such that the cost to make a distribution to creditors would equal or exceed the amount on hand for distribution, the Plan Administrator may donate the remaining Cash to a charitable organization that is a qualified tax exempt entity under Internal Revenue Code § 501(c)(3).

b.   **Objections to Disputed Claims**.   Any objections to Claims may be prosecuted by the Plan Administrator, or any other party in interest.   Except as otherwise provided by order of the Bankruptcy Court, the Plan Administrator, or any other party in interest may file an objection to any Claim until ninety (90) days after the Effective Date.

c.   **Estimation of Claims**.   The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.   The Plan Administrator shall be entitled to request that the Bankruptcy Court determine

either the Allowed amount of such Claim or a maximum limitation on such Claim. If the Bankruptcy Court determines the maximum limitation of such Claim, such determination shall not preclude the Plan Administrator from pursuing any additional proceedings to object to any ultimate payment of such Claim. If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan. All such proceedings are cumulative and not exclusive remedies.

d.   **Disputed Claims Reserve**.

i.   <u>Establishment and Maintenance of Disputed Claims Reserve</u>.  The Plan Administrator shall maintain a reserve (the "<u>Disputed Claims Reserve</u>") equal to one hundred percent (100%) of the distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as determined by a Final Order.

ii.   <u>Distributions Upon Allowance of Disputed Claims</u>.  The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Initial Distribution Date. No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve, the Distribution Account, or the Plan Administrator with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim.

e.   **Reversion of Unclaimed Checks and Disputed Claims Reserve**.  The following amounts shall revert and be vested in the Estate free and clear of any claim or interest of any holder of a Claim under the Plan: (a) the amount of any checks issued for distributions under the Plan that remain uncashed for a period of ninety (90) days after the date of such distribution,[1] and (b) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash actually distributed on account of such Disputed Claim.

f.   **Retention and Preservation of Claim Objections and Causes of Action**. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, upon occurrence of the Effective Date, the Plan Administrator's rights to object to all Claims asserted against the Estate and all of the Debtor's or Estate's Causes of Action, including without limitation the following: (a) preference actions under Section 547 of the Bankruptcy Code against all persons that received transfers from the Debtor in the one year prior to the Petition Date; (b) Causes of Action asserted in any adversary

---

[1] Any person or entity that (i) receives a check issued for a distribution under the Plan and (ii) fails to cash such check for a period of ninety (90) days after the date of such distribution forfeits any rights to receive future distributions under the Plan and will not receive further distributions.

proceeding that is pending as of the Confirmation Date; (c) all Claims and Causes of Action disclosed in the Schedules, which are incorporated herein by reference; and (d) any and all other Claims and Causes of Action that the Debtor holds preconfirmation, including, without limitation, Claims for unpaid accounts receivable and fraudulent transfer, shall vest in the Liquidating Debtor. Thereafter, the Plan Administrator shall have standing to bring all Claims and Causes of Action for the benefit of and in accordance with the terms of the Liquidating Debtor.

Unless a Claim or Cause of Action against any Person is expressly waived or released in the Plan or any Final Order of the Bankruptcy Court, the Estate and the Liquidating Debtor expressly reserve such Claim or Cause of Action for later adjudication (including without limitation, Claims and Causes of Action not specifically identified or which the Plan Administrator may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Plan Administrator at this time or facts and circumstances which may change or be different from those which the Plan Administrator now believe to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claims preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Claims or Causes of Action have been expressly released in the Plan or any other Final Order of the Bankruptcy Court.

## 7.
## VOTING ON THE PLAN

a.     **Voting of Claims**.  Each holder of an Allowed Claim in an impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

b.     **Nonconsensual Confirmation**.  If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right to perform the following: (a) confirm the Plan under section 1191(b) of the Bankruptcy Code, and (b) to amend the Plan in accordance with Section 11.f hereof and section 1193 of the Bankruptcy Code to the extent necessary to obtain Confirmation.

## 8.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

a.     **Executory Contracts and Unexpired Leases**.   On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected except for any executory contract or unexpired lease that (a) has been assumed pursuant to a Final Order of the Bankruptcy Court entered before the Effective Date, or (b) is the subject of a separate

14

motion to assume and assign, or to reject, filed under Section 365 of the Bankruptcy Code by the Debtor before the Effective Date.

      b.    **Rejection Damage Claims**.  If the rejection of an executory contract or unexpired lease by the Debtor pursuant to this Article VIII results in a Claim for damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or their respective properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served on the Plan Administrator on or before thirty (30) days following the Confirmation Date.  Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims under the Plan.  The Plan Administrator shall have the right to object to any such rejection damage claims filed.

## 9.
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

      a.    **Conditions Precedent to Effectiveness**.  The Plan shall not become effective, and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived:

      i.    the Confirmation Order shall have been entered by the Bankruptcy Court and shall have become a Final Order;

      ii.    all actions, other documents, and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective;

      iii.    the Estate shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date.

      b.    **Waiver of Conditions**.  The Debtor may waive one or more of the conditions precedents to the effectiveness of the Plan set forth in Section 9.1 above, except that the Debtor may not waive the condition that the Estate will have sufficient Cash to meet all payment and funding obligations under the Plan on the Effective Date.

## 10.
## RETENTION OF JURISDICTION

      a.    **Retention of Jurisdiction**.  After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to, the Bankruptcy Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code:

> i.      to hear and determine any objections to the Allowance of any Claims or any controversies as to the classification of any Claims or estimate any Disputed Claim;

> ii.     to hear and determine any and all applications by Professionals and the Subchapter V Trustee for compensation and reimbursement of expenses;

> iii.    to hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow any Claims resulting therefrom;

> iv.     to enforce the provisions of the Plan subject to the terms thereof;

> v.      to correct any defect, cure any omission, approve permitted modifications, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

> vi.     to determine any Claim or liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

> vii.    to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code; and

> viii.   to determine such other matters as may be provided for in the Confirmation Order.

> ix.     to hear and determine all timely filed applications for allowance of Administrative Expense Claims.

## 11.
## MISCELLANEOUS

a.      **Continuation of Injunctions or Stays Until Effective Date**.  All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

b.      **Injunction Relating to the Plan**.  As of the Effective Date, all Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor or its Estate, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged or treated pursuant to the Plan, except to the extent expressly permitted under the Plan. Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present, future, or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

4880-3985-4146

c.   **Bar Date for Administrative Claims**.   All applications for allowance of Administrative Claims other than (a) fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court (which are governed by Section 2.b.iii of the Plan), and (b) fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930, shall be filed not later than thirty (30) days after the Effective Date.   All Administrative Claims not filed within thirty (30) days after the Effective Date shall be and hereby are forever barred.   The deadline in the preceding sentence shall be construed and have the same force and effect as a statute of limitations.   The Plan Administrator shall provide notice to all creditors listed on the Bankruptcy Court mailing matrix of the bar date described in this Section 11.3 within ten (10) days after the Effective Date.   The Bankruptcy Court shall determine all Administrative Claims.

d.   **Default of Plan**.   In the event of any default of the provisions of this Plan, a creditor or party in interest aggrieved by such default may provide written notice to the Plan Administrator. The notice of default must describe with specificity the nature of the default alleged and the steps required to cure such default.   The Plan Administrator shall have thirty (30) days after receipt of notice of default to cure such default.   If the default is not cured within thirty (30) days after receipt of a notice of default, then a creditor or party in interest aggrieved by such default may apply to the Bankruptcy Court to compel compliance with the applicable provisions of the Plan.   The Bankruptcy Court, after notice and a hearing, shall determine whether a default occurred, and if a default occurred, whether such default has been cured. Upon finding a material default, the Bankruptcy Court may issue such orders as may be appropriate, including an order compelling compliance with the pertinent provisions of the Plan.

e.   **Setoffs**.   Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Estate or any rights or setoff the Estate may have against any Person.

f.   **Amendment or Modification of the Plan**.   Subject to section 1193 of the Bankruptcy Code, alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.   The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1191 of the Bankruptcy Code.   A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any exhibit hereto.

g.    **Severability**.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

h.    **Revocation or Withdrawal of the Plan**.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Estate or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Estate.

i.    **Binding Effect**.  The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

j.    **Notices**.  All notices, requests and demand to or upon the Plan Administrator shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed.

k.    **Governing Law**.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah, without giving effect to the principles of conflicts of law of such jurisdiction.

l.    **Final Decree**.

i.    Closing the Bankruptcy Case.  As soon as the Plan Administrator determines that there is no further need for administration of the Case by the Bankruptcy Court, the Bankruptcy Case shall be closed pursuant to 11 U.S.C. § 350 upon (i) the filing of a report and recommendation to close the Bankruptcy Case, (ii) after twenty-eight (28) days' notice to parties in interest, and (iii) the entry of an appropriate final decree and/or Order by the Court closing the Bankruptcy Case.  Absent an order extending the time for entry of a final decree entered after a notice hearing and opportunity for hearing, a final decree closing the Bankruptcy Case shall be entered no later than one (1) year after the Confirmation Date and is anticipated to be entered as soon as the Effective Date.  The Plan Administrator will comply with Local Rule 3022.1 in seeking entry of a final decree.  Subject to the Bankruptcy Court's discretion, the Bankruptcy Case may be

4880-3985-4146

closed notwithstanding that (i) the Plan Administrator is still pursuing or contemplating pursuing the Causes of Action and (ii) distributions remain to be paid under the Plan. Notwithstanding the closing of the Bankruptcy Case, the Court will retain jurisdiction over all Causes of Action and Claims of the Debtor, the Estate, or the Plan Administrator whether commenced before or after the closing of the Bankruptcy Case.

        ii.    <u>Reopening Case</u>. At any time, the Plan Administrator may obtain entry of an order reopening the Bankruptcy Case to obtain any relief or order from the Bankruptcy Court consistent with Section 10.a of this Plan. Although the Plan Administrator may seek such relief on an ex parte basis, the Plan Administrator, as the case may be, shall give notice of its motion or other request to the US Trustee. Except as expressly provided in Section 11.d of this Plan, the Plan Administrator shall not be required to reopen the Bankruptcy Case to exercise any of the Default Remedies set forth in Section d of the Plan.

        m.    **Headings**. Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

        n.    **Filing of Additional Documents**. On or before substantial consummation of the Plan, the Debtor or the Plan Administrator shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

        o.    **Inconsistency**. In the event of any inconsistency between the Plan and the Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

DATED July 21, 2023.

                /s/ Darren Neilson
                Brian M. Rothschild
                Darren Neilson
                Simeon Brown
                **PARSONS BEHLE & LATIMER**

                *Attorneys for Peak Theory, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2023, I caused or will cause a true and correct copy of the foregoing **DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF LIQUDATION DATED JULY 21, 2023** to be served by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

- Darren B. Neilson     dneilson@parsonsbehle.com
- Brian M. Rothschild     brothschild@parsonsbehle.com, ecf@parsonsbehle.com; docket@parsonsbehle.com
- D. Ray Strong tr rstrong@thinkbrg.com, UT30@ecfcbis.com;drstrong@ecf.axosfs.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Melinda Willden tr on behalf of U.S. Trustee United States Trustee melinda.willden@usdoj.gov, Lindsey.Huston@usdoj.gov; James.Gee@usdoj.gov; Rinehart.Peshell@usdoj.gov; Rachelle.D.Armstrong@usdoj.gov; Brittany.Eichorn@usdoj.gov

### US Mail

**Jon Allen**
Ampleo
3300 Triumph Blvd
Suite 100
Lehi, UT 84043

**CFO Solutions, LLC dba Amplo**
13601 W McMillan Rd
#102 PMB 320
Boise, ID 83713

**Quiet Light Brokerage, Inc.**
631 Brawley School Road
Suite 300
Mooresville, NC 28117

PARSONS BEHLE & LATIMER

/s/ Darren Neilson
Brian M. Rothschild
Darren Neilson
Simeon Brown
*Attorneys for Peak Theory, Inc.*

4880-3985-4146